**Don Soon PARK, Petitioner–Appellant,**

v.

**People of the State of CALIFORNIA; Attorney General of the State of California, Respondents–Appellees.**

No. 96–56750.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1998.

Opinion Filed Jan. 14, 1999.

Opinion Withdrawn Jan. 21, 2000.

Filed Jan. 21, 2000.

Sharon M. Bunzel, O'Melveny & Myers, San Francisco, California, for the petitioner-appellant.

Carl N. Henry, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before: HUG, Chief Judge, FLETCHER and TROTT, Circuit Judges.

## ORDER

The opinion filed January 14, 1999, is hereby WITHDRAWN.

## OPINION

TROTT, Circuit Judge:

Don Soon Park seeks review of a decision by the District Court for the Central

District of California dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254(a) (1994). Park's petition contained four claims. The district court dismissed his first claim on the merits, holding that the state court's consolidation for trial of crimes committed on different occasions did not present a federal due process concern. The district court dismissed Park's remaining claims as procedurally defaulted in the California courts. Park could have pursued those claims on direct appeal from his conviction, and the district court concluded that Park's failure to do so constituted a procedural default from which he was not entitled to relief.

■ Park has since completed his prison sentence on the conviction at issue in this habeas petition. He was thereafter ordered deported based on that conviction and released on bail pending his appeal of the deportation order. Park's release from prison does not moot his habeas petition. *Wood v. Hall,* 130 F.3d 373, 376 (9th Cir.1997). Because he faces deportation, Park suffers actual consequences from his conviction.

We have jurisdiction under 28 U.S.C. § 2253 (1994), and we affirm in part, reverse in part, and remand.[1]

# I

## Background

Park was imprisoned in 1994 in California as the result of five felony convictions stemming from two separate incidents of criminal behavior. For his crimes against Munho Kim, Park was convicted of conspiracy to commit robbery, conspiracy to commit burglary, first degree residential burglary, and attempted first degree residential robbery. For his subsequent crime against Keum Kim, Park was convicted of making terrorist threats, but acquitted of counts charging use of a destructive device and explosives to injure/destroy and burn a structure.

The Munho Kim crimes were the result of a plan hatched by Park, Michael Nelson,

and Raymond Sander to rob Munho Kim, who owed Park money. On August 20, 1991, Sander and Nelson followed Munho into his garage and attacked him while Park waited a few blocks away in his automobile. Nelson and Sander abandoned the robbery attempt when Munho's wife entered the garage and screamed, but were detained by the police while trying to flee. Park escaped.

Park's crime against Keum Kim occurred almost a year later. Park had demanded money from Keum on account of a statement by her granddaughter that Park regarded as defamatory, and for a debt owed to Park by Keum's son. Keum refused to pay. Park repeatedly demanded payment over a period of several months, ultimately threatening to bomb Keum's family liquor store and kill Keum and her family. On June 8, 1992, the store owned by Keum's family was destroyed by a pipe bomb.

Michael Nelson cooperated with the police after he was arrested. While still in jail, he participated in two incriminating taped conversations with Park, who was not yet in custody. They discussed the burglary and attempted robbery of Munho Kim. Later, Nelson was released and continued his feigned friendship with Park, the latter not aware of Nelson's role as an informer. Nelson testified that Park then told him of Park's intention to "blow up" Keum's family store.

Over Park's objection, the state trial court allowed the consolidation into one trial of the two sets of alleged crimes.

At Park's trial, Nelson testified against Park, and the incriminating tapes that Nelson had cooperated in making were introduced into evidence. During the trial, Park's counsel discovered that Nelson had been a government informer on other matters, and he moved for a mistrial, arguing that he had been surprised and denied the opportunity to conduct discovery with regard to possible bias. The trial court held

---

1. Respondents' motion to certify this case to the California Supreme Court is denied.

an in camera hearing on the extent of Nelson's role as an informer for the police and denied the motion, concluding that Nelson's role did not involve information which might impeach Nelson's testimony. The court later gave the jury a standard instruction about the suspect credibility of a cooperating witness.

Park was convicted on all four Munho Kim counts and the terrorist threats count from the Keum Kim crimes. Park appealed only the state court's refusal to sever the counts for trial. The California court of appeal affirmed the consolidation. The California Supreme Court denied discretionary review. Park then brought a habeas petition in the California Supreme Court, claiming (1) prosecutorial misconduct for failing to disclose Nelson's informant status, (2) abuse of the trial court's discretion for permitting the secret tapes to be entered into evidence, and (3) denial of the right to a speedy trial. Park's petition variously characterized his claims as violations of both the federal and the California Constitutions and California statutes, citing statutes and provisions of each Constitution as well as case law pertaining to each body of law. On March 27, 1996, the California Supreme Court denied the petition with only this explanation: "Petition for writ of habeas corpus DENIED. (*See In re Dixon* (1953) 41 Cal.2d 756, 759, 264 P.2d 513.)." *Dixon* stands for the proposition that an inexcusable failure to bring a trial-error claim on direct appeal normally bars consideration of that claim on habeas. We note that the court did not make a clear statement that its decision was based on a bona fide, adequate, and independent ground. *See Harris v. Reed*, 489 U.S. 255, 261, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

Park then brought this habeas petition in federal district court, alleging (1) federal constitutional error arising from the consolidation of the sets of counts, (2) prosecutorial misconduct in failing to disclose that Nelson had been a government informant, (3) abuse of discretion by the California trial court in permitting the jury to hear a secret jailhouse tape, and (4) denial of his right to a speedy trial.

## II

## Standard of Review

This court reviews a district court's decision to deny an application for a writ of habeas corpus de novo. *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir.1997). Factual findings are reviewed for clear error. *United States v. Span*, 75 F.3d 1383, 1386 (9th Cir.1996).

## III

## Consolidation of Counts

We attend first to Park's properly exhausted claim that is before us—the claim that the consolidation in one trial of the crimes for which he was charged violated his federal due process rights.

Federal habeas is available for improper consolidation only if the simultaneous trial "actually render[ed Park]'s state trial fundamentally unfair and hence, violative of due process." *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991). This court considers each count separately, asking whether "the trial on a particular count was fundamentally unfair in light of that count's joinder with one or more other charges." *Id.* Park has the burden to prove unfairness rising to the level of a due process concern. *See McKenzie v. McCormick*, 27 F.3d 1415, 1418 (9th Cir. 1994). We hold that Park's arguments fail to fulfill his burden, and we affirm the district court's decision on this claim.

Park argues first that, under California law, the crimes should not have been consolidated because evidence relevant to one set of counts would not have been admissible at a separate trial on the other set of counts. However, a violation of state law standing alone is not cognizable in federal court on habeas. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus

relief does not lie for errors of state law.' ") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)); *Featherstone*, 948 F.2d at 1503. Park has failed to meet his burden of showing, in federal constitutional terms, that his state trial was fundamentally unfair. We have held that the failure of the jury to convict on all counts is " 'the best evidence of the jury's ability to compartmentalize the evidence.' " *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir.1993) (quoting *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir.1987)). The *Baker* rule distinguishes the instant case from our decision in *Bean v. Calderon*, 163 F.3d 1073 (9th Cir.1998). In *Bean*, "no such acquittal offered affirmative evidence of the jury's ability to assess the Schatz and Fox evidence separately." *Id.* at 1086. In the case at bar, by contrast, the jury did not convict Park on two of the Keum Kim counts, strong evidence that he was not prejudiced by the admission of evidence which was possibly irrelevant with regard to some of the counts.

 Park next argues that the consolidation was likely to inflame the jury against him. In order to demonstrate actual unfairness, however, Park must show that the jury was actually inflamed. *See Featherstone*, 948 F.2d at 1503. Park makes no such showing and, as discussed above, because the jury did not convict on all counts it presumably was able to compartmentalize the evidence. *See Baker*, 10 F.3d at 1387. This case is entirely unlike *Bean*, where the government continually urged the jury to cross-apply the evidence, the trial court gave only a brief instruction regarding the need to consider the crimes separately, and the jury convicted on both counts. 163 F.3d at 1083–86.

 Park argues third that the prosecution combined two weak cases to make a stronger case in the aggregate. This circuit recognizes potential due process concerns when a poorly-supported count is combined with one that is well supported. *Bean*, 163 F.3d at 1084; *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir.1986).

In this case, we do not believe that the evidence supporting the convictions for the separate crimes was that unequal. Park points out that the prosecution did not file charges arising from the Munho Kim incident until after the Keum Kim crimes were committed. However, if evidence regarding the Keum Kim counts was stronger than evidence regarding the Munho Kim counts, Park presumably would have been convicted on all of the Keum Kim counts and not all of the Munho Kim counts, not the other way. Further, the record indicates that the jury must have found Nelson's testimony credible, even in the light of a limiting instruction admonishing the jury to view his testimony with distrust. Nelson's testimony was a large part of the government's case against Park on the Munho Kim counts. Park's argument that the state's case was weak is not supported by the record.

## IV

### Procedural Default

 A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements and is unable to demonstrate cause and prejudice or a fundamental miscarriage of justice. *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). As the Court said in *O'Sullivan*,

> [b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must [properly] exhaust his remedies in state court. In other words, the state prisoner must give the state court an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.

*Id.*, 119 S.Ct. at 1731. If a prisoner has not given the state court an opportunity to act on his claims, and the time to do so has expired, then the prisoner with a federal habeas petition and no valid excuse for his

defalcation will normally encounter closed jurisdictional doors at the federal courthouse. *Id.* at 1734.

■ Relying on its understanding of *Dixon*, the district court held Park's remaining claims procedurally defaulted and did not consider their merits. For the procedural default rule to apply, however, the application of the state procedural rule must provide "an adequate and independent state law basis" on which the state court can deny relief. *Coleman v. Thompson*, 501 U.S. at 729–30, 111 S.Ct. 2546; *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir.1997). In that connection,

> "when . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so."

*Coleman*, 501 U.S. at 733, 111 S.Ct. 2546 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), which established a presumption made applicable to habeas corpus review by *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). If indeed the state court of last resort did exercise its opportunity to act on his federal constitutional claims, then no procedural default occurred that would bar federal review of those claims.

An application of these rules to Park's claims convinces us that the rule employed by the California Supreme Court when it denied Park's petition was not independent of federal law with regard to three of Park's claims. Accordingly, we reverse the district court's decision on two dis-

missed claims, but we affirm on the third claim on different grounds.

## A
### California's *Dixon* Rule

■ In California, a convicted defendant desiring to bring claims in a state habeas petition, must, if possible, have pursued the claims on direct appeal from his conviction. *See Ex parte Dixon*, 41 Cal.2d 756, 264 P.2d 513, 515 (1953). This requirement is called the *Dixon* rule. Park did not directly appeal his latter three claims for habeas relief from his state court conviction even though those claims arose during his trial and were apparent from the record. If the *Dixon* rule was an adequate[2] and independent state law ground on which to base a denial by the California Supreme Court of state habeas relief, Park normally would be barred from bringing this petition for failure to include the claims in the appeal from his conviction, *see Dixon*, 264 P.2d at 515, *unless* he could establish a recognized ground for relief from his state procedural default.

In the years following *Dixon*, the California Supreme Court in a number of cases established exceptions to the original *Dixon* rule and to other similar procedural bars—exceptions which permitted the consideration on state habeas of some claims even though known but not appealed, or unknown but not timely brought when discovered. However, because the exceptions to its procedural bars had become undefined and imprecise over the years, the California Supreme Court in 1993 decided a pair of cases—*In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), and *In re Harris*, 5 Cal.4th 813, 21 Cal. Rptr.2d 373, 855 P.2d 391 (1993)—designed to govern California courts' exercise of discretion when applying, respectively, (1) the *Dixon* default rule, and (2)

---

2. Park argues that the *Dixon* rule was not an adequate basis for the California Supreme Court to deny review at the time of his appeal from his conviction. Because we hold that the *Dixon* rule was not independent as ap-

plied to Park's claims, we do not decide here whether *Dixon* was an adequate state ground for default. *Cf. Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir.1997).

the longstanding but unclear bar of "untimeliness" for recently discovered claims not apparent from the record. These decisions were intended to "reestablish California's procedural rules governing state habeas petitions and clearly define and limit the applicable exceptions." *Fields*, 125 F.3d at 763–64. Specifically, a California court operating under *In re Harris* and *In re Clark* would hear the merits of a claim in a state habeas petition, despite the petitioner's failure to bring the claim on direct appeal from the conviction, if the court found one of four exceptions. These exceptions are: (1) " 'fundamental constitutional error,' " (2) a lack of " 'fundamental jurisdiction' " by the trial court over the petitioner, (3) the trial court's " 'acting in excess of jurisdiction,' " and (4) an intervening " 'change in the law.' " *Fields*, 125 F.3d at 763 (quoting *In re Harris*, 21 Cal.Rptr.2d 373, 855 P.2d at 398–407).[3]

## B

### Independence

■■■ For a state procedural rule to be "independent," the state law ground for decision must not be "interwoven with the federal law." *Long*, 463 U.S. at 1040–41, 103 S.Ct. 3469; *see Reed*, 489 U.S. at 265, 109 S.Ct. 1038 (applying *Long* to federal habeas cases). Otherwise, the state may fairly be said to have examined the federal claim. A state law ground is so interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

In re Harris's "fundamental constitutional error" exception to the *Dixon* bar permitted a hearing on the merits of a state habeas petition "when the habeas corpus petitioner claims a violation of his or her fundamental constitutional rights." 21 Cal.Rptr.2d 373, 855 P.2d at 398–99. The California Supreme Court recently stated that prior to 1998 it necessarily addressed fundamental constitutional claims when applying the *Dixon* rule. *In re Robbins*, 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, 338 (1998) ("When, in our orders, we impose the bars of *Dixon* [or] *Waltreus*, . . . this signifies that *we have concluded* that none of the four exceptions set out in [*In re Harris* ] apply." (emphasis added)). Therefore, if "fundamental constitutional rights" include federal-law issues, the denial of Park's petition citing to *Dixon* was not independent of federal law and does not preclude federal habeas review. *See Reed*, 489 U.S. at 262–63, 109 S.Ct. 1038.

No question can exist that *In re Harris* defined fundamental constitutional error by reference to federal law. The *Harris* court stated that fundamental constitutional error implicates "the individual's right . . . to a fair trial under both the state and federal Constitutions." 21 Cal.Rptr.2d 373, 855 P.2d at 399. The court then cited *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), to clarify the definition of fundamental constitutional error. *Harris*, 21 Cal.Rptr.2d 373, 855 P.2d at 402.

The California Supreme Court has adopted in *Robbins* a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted. *Id.*, 959 P.2d at 339.[4]

---

3. *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), dealt specifically with the bar of "untimeliness," a separate and distinct bar from the *Dixon* rule. *See In re Robbins*, 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, 340 n. 34 (1998). The *Robbins* court explained that the four exceptions stated in *In re Harris* applied to the *Dixon* rule and to a procedural bar set out in *In re Waltreus*, 62 Cal.2d 218, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965). *Robbins*, 77 Cal.Rptr.2d

153, 959 P.2d at 340 n. 34. Four exceptions set out in *In re Clark*, of which one was likewise a "fundamental constitutional error" exception, applied to the untimeliness bar. *Id.*

4. *Robbins* says that the California courts will now "assume, for the purpose of addressing the procedural issue, that a federal constitutional error is *stated*, and we shall find [the first *In re Clark* ] exception inapposite if,

We do not decide here whether *Robbins* establishes the independence of California's *Dixon* rule for the future. *Robbins* is clear, however, that its new approach is prospective, and would not have applied when the California Supreme Court denied Park's habeas petition. *See id.*, 959 P.2d at 338–39 ("[W]e shall, in this case and in the future, *adopt* the following approach as our standard practice." (emphasis added)).

Accordingly, at the time of Park's habeas petition, the California Supreme Court's terse denial based on *Dixon* did not identify a "particular procedural rule that completely barred" Park's federal constitutional claims. *Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir.1994). Rather, in light of *Robbins*'s acknowledgment that the constitutional error exception encompassed consideration by the court of the merits of federal constitutional questions, the California Supreme Court necessarily made an antecedent ruling on federal law before applying the *Dixon* bar to any federal constitutional claims raised in Park's state habeas petition. That court did so by concluding that no fundamental federal constitutional error had occurred. Thus, if any of Park's claims rested on an assertion of a denial of a federal constitutional right, he cannot be held to have procedurally defaulted under *Dixon*.

### C

### The Right to Raise a Claim

According to *O'Sullivan* and § 2254(c), Park should have taken his current claims to the California Supreme Court on direct appeal. To quote the Court: "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 119 S.Ct. at 1732. His failure to do so temporarily rendered those claims both unexhausted and potentially unexhaustible—or procedurally defaulted—because the time for leave to appeal "has long passed." *Id.*, 119 S.Ct. at 1733. Nevertheless, it appears as a matter of federal law that Park escaped the inchoate federal habeas consequences of his failure by subsequently pursuing his new claims on state habeas. This is so because it can be fairly said under § 2254(c) that California, through its recognized exception to the *Dixon* rule, gave him the right "to raise, by any available procedure, the question presented." As Justice Scalia said for the Court in *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), "State procedural bars are not immortal . . . they may expire because of later actions by state courts. If the last state court to be presented with a federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available." *Id.* at 801, 111 S.Ct. 2590.[5] Park may have had no right to a *review* of his claims in the California Supreme Court, but he did under *Dixon* have a "right . . . to *raise* his claims before that court. That is all § 2254(c) requires." *O'Sullivan*, 119 S.Ct. at 1732 (internal quotations omitted) (emphasis added). In effect, California provided Park a second chance, and for our purposes, he took advantage of it. Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims. Moreover, as we have demonstrated, the California Supreme Court at the time this case came before it did examine Park's claims for fundamental

---

based upon our application of state law, it cannot be said that the asserted error 'led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner.' " *Id.*, 959 P.2d at 339 (quoting *In re Clark*, 21 Cal.Rptr.2d 509, 855 P.2d at 761) (emphasis added). The purpose of this approach was to establish the adequacy and independence of the State Supreme Court's future *Dixon*/*Rob-*

*bins* rulings and to indicate that a prisoner seeking collateral relief with respect to new federal claims no longer had any recourse to exhaust in the state courts.

**5.** As in *Ylst*, we assume that the rule that a discretionary denial of review cannot lift a preexisting procedural bar did not exist in California in 1994. *See id.* at 802 n. 2, 111 S.Ct. 2590.

constitutional error; and that, too, is all that is required to exhaust a claim and to avoid procedural default. This analysis may no longer be the case after *Robbins,* but Park surely gave the state court the "first opportunity to review his claim and provide any necessary relief." *O'Sullivan,* 119 S.Ct. at 1732; *see also Coleman,* 501 U.S. at 731, 111 S.Ct. 2546 (stating the key inquiry to be whether the state courts had an "opportunity ... to correct a constitutional violation...").

## D

## Park's Claims

### 1

■ Park's second claim in the instant petition, which he brought in his state petition, raised prosecutorial misconduct under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in failing to disclose Nelson's informant status and thereby preventing Park from conducting relevant discovery. *Brady* was based on the federal constitutional due process concern associated with the prosecution's failure to disclose a witness's informant status. 373 U.S. at 85, 83 S.Ct. 1194. Park's claim thus alleged federal constitutional error and required the California Supreme Court to address the merits of the federal claim before applying the *Dixon* procedural bar. *Harris,* 21 Cal.Rptr.2d 373, 855 P.2d at 399. *Dixon* was not an independent procedural bar as applied to Park's *Brady* claim, so this claim was not procedurally defaulted.

### 2

■ Likewise, Park's third claim, also articulated in his state petition, alleges federal constitutional error in the improper admission at his trial of some of the information contained on the jailhouse tapes. Because this claim alleges a federal constitutional error, the *Dixon* rule is not independent when applied to it. Nevertheless, admission of evidence is a state law concern, unless the state trial court's decision is error rising to the level of a due process violation. *McGuire,* 502 U.S. at

67, 112 S.Ct. 475. Other than citing to the Fifth, Ninth, and Fourteenth Amendments, Park's arguments all relate to California law relevancy standards for admitting evidence. At the time that the tapes were recorded, although Nelson had been charged with a crime, Park was not in custody and had not been charged. We hold that Park failed to fulfill his burden adequately to allege and demonstrate that the admission of the tape recorded evidence of guilt constituted a violation of due process. *See Smith v. Stewart,* 140 F.3d 1263, 1272 (9th Cir.1998). Thus, although we consider this claim not to have been procedurally defaulted, no matter how Park styles the claim, it is not cognizable on federal habeas.

### 3

Finally, Park's fourth claim in the instant petition, which he also brought in his state petition, raised as a federal constitutional claim the denial of his right to a speedy trial. Park cited to *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which articulated the test for a federal constitutional claim of the denial of a right to a speedy trial. *Id.* at 530–33, 92 S.Ct. 2182. Because Park's speedy trial claim alleged federal constitutional error, *Dixon* was not an independent bar as applied to this claim.

We reverse the district court's holding of procedural default on Park's *Brady* and speedy trial claims, and hold that Park's admission of evidence claim was not procedurally defaulted but affirm on the ground that Park did not adequately allege a due process violation in his federal petition.

## V

## Park's Remaining Arguments

In the briefs and at argument on this appeal, Park's counsel discussed claims of ineffective assistance of trial and appellate counsel. Park's argument in this regard was that the delay from the alleged denial of his right to a speedy trial necessarily

detracted from his counsel's ability to defend him. However, Park did not raise ineffective assistance of trial counsel as an independent claim in either his state or the current petition.

■ In his state petition, Park raised ineffective assistance of counsel only as an excuse for his failure to bring claims on direct appeal. We could entertain this argument as "cause" for Park's procedural default, excusing the default only if Park could demonstrate prejudice and had exhausted this claim in state court. *See Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Because we do not hold any of Park's claims procedurally defaulted, however, we do not reach the cause and prejudice exception. We do not consider either ineffective assistance of counsel arguments because Park did not properly raise them as claims in the instant petition.

## VI

### Conclusion

For the foregoing reasons, we affirm the district court in holding that Park's improper consolidation claim fails on the merits. We reverse as to Park's *Brady* and speedy trial claims and hold that those claims were not procedurally defaulted at the state level. We affirm as to Park's improper admission of evidence claim on the grounds that Park failed to adequately allege and prove a due process violation, and affirm with regard to Park's remaining claims because Park did not present claims of ineffective assistance of trial or appellate counsel in his federal petition.

AFFIRMED in part, REVERSED in part, and REMANDED.