**Joseph Murl BENNETT, Petitioner–Appellant,**

v.

**Glen MUELLER, Warden; Cal Terhune, Director; Attorney General of the State of California, Respondents–Appellees.**

No. 00–56199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 2001

Filed Nov. 29, 2001

Tina Long Perry, Attorney at Law, Whittier, California, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California, Los Angeles, California, for respondents-appellees.

David P. Druliner, Chief Assistant Attorney General, Los Angeles, California, for respondents-appellees.

Marc E. Turchin, Acting Senior Assistant Attorney General, Los Angeles, California, for respondents-appellees.

Marc J. Nolan, Deputy Attorney General, Los Angeles, California, for respondents-appellees.

Gary A. Lieberman, Deputy Attorney General, Los Angeles, California, for respondents-appellees.

Before: BRUNETTI, RYMER, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Joseph Murl Bennett ("Bennett") appeals the district court's order adopting the Magistrate Judge's Report and Recommendation denying his Petition for Writ of Habeas Corpus on the state procedural ground of untimeliness. We must decide whether the district court erred in concluding that the California Supreme Court's denial of Bennett's petition "on the merits and for lack of diligence" constituted an independent and adequate state ground so as to render his habeas petition procedurally defaulted. In so doing, we must determine whether the state court's reliance upon *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (Cal.1993) and *In re Robbins*, 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311 (Cal.1998) for untimeliness is free from entanglement with federal law and based upon a well-established and consistently applied rule. We agree with the district court that reliance upon *Clark* and *Robbins* constitutes an independent and adequate state ground. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 2253, and we affirm.

## I. Background

In 1986, Bennett pled guilty to first-degree burglary in Los Angeles Superior Court Case No. A468635. In the guilty plea form, signed by Bennett and his counsel, Bennett acknowledged: "I understand the court may send me to state prison for a maximum of 6 years." The plea agreement further provided: "If defendant pleads in case # A470545 and # A470930, this case will be 16 months consecutive to any sentence in those cases."

At the time of sentencing in this case (A468635), Bennett attempted to withdraw his guilty plea and enter a plea of not guilty. He claimed it was his understanding, although his memory was, admittedly, "very vague," that he was to receive 16 months on this case regardless of whether he pled guilty in his remaining cases. The trial court denied Bennett's motion and, finding the aggravating circumstances of his crime (a nighttime residential burglary) substantial, sentenced him to a prison term of six years. The trial court made clear, however, that the other two cases were still pending; therefore, an open plea remained if he wished to plead guilty to the other cases.

Refusing to plead guilty to the remaining cases, Bennett requested a jury trial, thus terminating his plea agreement. He was convicted by a jury in consolidated case Nos. A470545 and A470930 of two counts of first degree burglary, forcible rape, forcible oral copulation, forcible sexual penetration with a foreign object, sodomy by force, and assault to commit rape. Bennett's combined sentence totaled forty-two years, four months, which was later reduced by one year, making his total term forty-one years, four months.

Bennett did not pursue a direct appeal after his guilty plea and conviction in 1986. Instead, twelve years after his conviction, in 1998, he filed a "Motion for Transcripts" in the California Superior Court. The Superior Court denied the motion, finding the issue "was raised, discussed, and re-

solved at time of sentencing.... The contention that defendant was improperly sentenced is without merit." Bennett later filed a Petition for Writ of Habeas Corpus in the Superior Court, which was denied as showing no grounds for relief. A Petition for Writ of Habeas Corpus was filed in the same case with the California Court of Appeal and the California Supreme Court. On May 25, 1999, the California appellate court summarily denied the petition without comment or citation to authority. On November, 23, 1999, the California Supreme Court denied the petition "on the merits and for lack of diligence."

Bennett then filed the instant Petition for Writ of Habeas Corpus in the United States District Court. Bennett claimed the trial court erred in failing to admonish him regarding the nature and effect of the plea agreement, rendering his guilty plea unknowing and involuntary; the trial court abused its discretion in failing to reasonably consider the motion to withdraw his plea; and his trial counsel was ineffective at the taking of the plea, the motion to withdraw the plea, and in failing to appeal. Respondents brought a motion to dismiss, arguing the petition was procedurally barred, which Bennett opposed. A Report and Recommendation was issued by the magistrate judge, recommending that the district court deny and dismiss the petition with prejudice on the ground of procedural default. On June 5, 2000, the district court adopted the Report and Recommendation and entered judgment denying and dismissing the petition with prejudice. On June 15, 2000, Bennett filed a notice of appeal and request for certificate of appealability in the district court. The district court denied the request. A motions panel of this court then granted a certificate of appealability.

## II. Procedural Default

■ Bennett argues that the state court's citation to *Clark* and *Robbins* did not constitute an independent and adequate state ground so as to render his habeas petition procedurally defaulted. Although none of the California decisions actually cited to *Clark* or *Robbins*, we have previously held that a California Supreme Court's denial of a habeas petition, citing only "lack of diligence," was an application of the untimeliness bar. *La Crosse v. Kernan*, 244 F.3d 702, 705 (9th Cir.2001) ("[T]he California Supreme Court was applying the untimeliness bar because [petitioner] delayed nearly twelve years between his direct appeal and his state petition for habeas corpus."). In the present case, Bennett waited twelve years after his conviction before filing his habeas petition. Therefore, in light of the state court's postcard denial, "on the merits and for lack of diligence," the district court was correct to conclude that the California Supreme Court was applying the untimeliness bar, as explained in both *Clark* and *Robbins*.

■ Under the independent and adequate state ground doctrine, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *La Crosse*, 244 F.3d at 704 (9th Cir.2001) (same). Although the California Supreme Court denied Bennett's state habeas petition both on the merits as well as for lack of diligence, and thus considered the merits of Bennett's claim, we must nevertheless examine whether denial for lack of diligence rested on an independent and adequate state procedural ground, because if it did, Bennett is procedurally barred from pursuing his claims in federal court.

A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim. *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992), *cert. denied,* 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993); *Thomas v. Lewis,* 945 F.2d 1119, 1123 (9th Cir.1991).

▮▮ "For the procedural default rule to apply, however, the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." *Park v. California,* 202 F.3d 1146, 1151 (9th Cir.2000) (quoting *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546). If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Noltie v. Peterson,* 9 F.3d 802, 804–05 (9th Cir.1993); *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Park,* 202 F.3d at 1150 ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements and is unable to demonstrate cause and prejudice or a fundamental miscarriage of justice.").

Because we conclude that the state procedural ground of untimeliness was invoked even without direct citation to *Clark* and *Robbins,* we must next consider whether reliance on these cases constitutes an independent and adequate state ground barring federal habeas relief.

### III. Independent

▮▮ We conclude that the California untimeliness rule, as expressed in *Clark/Robbins,* is an independent state procedural ground. "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *La Crosse,* 244 F.3d at 704 (citing *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)); *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir.), *cert. denied,* 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law.'") (quoting *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546). "A state law ground is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" *Park,* 202 F.3d at 1152 (quoting *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). "'[U]nless the state court makes clear that it is resting its decision denying relief on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds, and the petitioner may seek relief in federal court.'" *La Crosse,* 244 F.3d at 704 (citation omitted).

▮▮ The California Supreme Court has long required that a petitioner in a habeas corpus proceeding justify any substantial delay in seeking relief. *In re Stankewitz,* 40 Cal.3d 391, 397 n. 1, 220 Cal.Rptr. 382, 708 P.2d 1260 (Cal.1985); *People v. Jackson,* 10 Cal.3d 265, 268, 110 Cal.Rptr. 142, 514 P.2d 1222 (Cal.1973); *In re Swain,* 34 Cal.2d 300, 304, 209 P.2d 793 (Cal.1949). Significant, unjustified delay in presenting habeas corpus claims to California state courts will bar consideration of the merits of the claims. Delay "is measured from the time the petitioner or counsel knew, or reasonably should have known, of the in-

formation offered in support of the claim and the legal basis for the claim." *Robbins,* 18 Cal.4th at 787, 77 Cal.Rptr.2d 153, 959 P.2d 311; *Clark,* 5 Cal.4th at 765 n. 5, 21 Cal.Rptr.2d 509, 855 P.2d 729 ("Delay in seeking habeas corpus or other collateral relief has been measured from the time a petitioner becomes aware of the grounds on which he seeks relief. That time may be as early as the date of conviction.") (citation omitted).

■ On August 3, 1998, in *Robbins,* the California Supreme Court recognized that, when reviewing state habeas petitions for the untimeliness ground embodied in *Clark* (as well as for distinct procedural grounds embodied in *Ex Parte Dixon,* 41 Cal.2d 756, 759, 264 P.2d 513 (Cal.1953) and *In re Harris,* 5 Cal.4th 813, 815, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993)), California courts previously considered the federal constitutional merits of the petitions in determining whether the petitions qualified for an exception to the rule of procedural default. *Robbins,* 18 Cal.4th at 812 n. 32, 814 n. 34, 77 Cal.Rptr.2d 153, 959 P.2d 311. The court then declared that henceforth California courts would no longer determine whether an error alleged in a state petition constituted a federal constitutional violation:

> We shall assume, for the purpose of addressing the procedural issue, that a federal constitutional error is stated, and we shall find the exception inapposite if, based upon our application of state law, it cannot be said that the asserted error "led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner."

*Id.* at 811–812, 77 Cal.Rptr.2d 153, 959 P.2d 311 (quoting *Clark,* 5 Cal.4th at 797, 21 Cal.Rptr.2d 509, 855 P.2d 729). The Court further announced that: "Whenever we apply the first three exceptions, we do

so exclusively by reference to state law. When we apply the fourth *Clark* exception, we apply federal law in resolving any federal constitutional claim." *Robbins,* 18 Cal.4th at 812 n. 32, 77 Cal.Rptr.2d 153, 959 P.2d 311. The fourth *Clark* exception, "that the petitioner was convicted or sentenced under an invalid statute," has not been raised by Bennett and, thus, is not relevant to this case.

We have since held that a California court's pre-*Robbins* denial of a state habeas petition for a *Dixon* violation does not bar subsequent federal review, and that the state court's discussion of the *Dixon* rule should apply equally to the *Clark* untimeliness rule. *Park,* 202 F.3d at 1152, 1152 n. 3. In *Park,* we observed that, as acknowledged in *Robbins,* the California Supreme Court previously addressed the merits of fundamental constitutional claims when applying the *Dixon* rule. *Id.* Thus, before *Robbins,* the *Dixon* rule was "interwoven" with, and not independent from, federal law. *Id.*

We declined to determine in *Park* "whether *Robbins* establishes the independence of California's *Dixon* rule for the future." *Park,* 202 F.3d at 1153. We nevertheless suggested that, for post-*Robbins* California Supreme Court denials, the analysis may be substantially different:

> The California Supreme Court has adopted in *Robbins* a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted.... The purpose of this approach was to establish the adequacy and independence of the State Supreme Court's future *Dixon/Robbins* rulings and to indicate that a prisoner seeking collateral relief with respect to new federal claims no longer had any recourse to exhaust in the state

courts.... *Robbins* is clear, however, that its new approach is prospective. *Id.* at 1152–53, 1152 n. 4.

Moreover, Bennett's claim that the interpretation of state constitutional principles and federal constitutional principles are necessarily intertwined is misguided. While it is true "that state courts will not be the final arbiters of important issues under the federal constitution; [it is equally true] that [the federal courts] will not encroach on the constitutional jurisdiction of the states." *Minnesota v. National Tea Co.*, 309 U.S. 551, 557, 60 S.Ct. 676, 84 L.Ed. 920 (1940). " 'It is fundamental that state courts be left free and unfettered by [the federal courts] in interpreting their state constitutions.' " *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (quoting *Minnesota*, 309 U.S. at 557, 60 S.Ct. 676). "This is not a mere technical rule nor a rule for our convenience. It touches the division of authority between state courts and [federal courts] and is of equal importance to each. Only by such explicitness can the highest courts of the states and [federal courts] keep within the bounds of their respective jurisdictions." *Minnesota*, 309 U.S. at 557, 60 S.Ct. 676.

 Therefore, we respect the California Supreme Court's sovereign right to interpret its state constitution independent from the federal laws. Applying *Robbins* prospectively, we affirm the district court's determination that the California Supreme Court's post-*Robbins* denial of Bennett's state petition for lack of diligence (untimeliness) was not interwoven with federal law and therefore is an independent procedural ground barring federal habeas relief.

## IV. Adequate

 For similar reasons, we conclude that the untimeliness rule is an adequate state procedural ground. For a state procedural rule to be deemed adequate, the state law ground for decision must be well-established and consistently applied. *Poland v. Stewart*, 169 F.3d 573, 578 (9th Cir.1998), *cert. denied*, 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.") (quoting *Ford v. Georgia*, 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). "The fact that the 'application of a rule requires the exercise of judicial discretion does not render the rule inadequate to support a state decision.' " *Wood v. Hall*, 130 F.3d 373, 376 (9th Cir.1997), *cert. denied*, 523 U.S. 1129, 118 S.Ct. 1818, 140 L.Ed.2d 955 (1998) (quoting *Morales*, 85 F.3d at 1392). "[J]udicial discretion may be applied consistently when it entails 'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.' " *Id.* at 377 (quoting *Morales*, 85 F.3d at 1392). State rules that are too inconsistently or arbitrarily applied to bar federal review "generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants ... and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claim is unfair." *Id.*

Although we have yet to rule directly on the question of which party bears the burden of establishing that the state procedural rule was not regularly and consistently applied in a habeas action, typically, it is the party asserting the affirmative defense that bears the burden. *See, e.g., Bean v. Calderon*, 1995 U.S. Dist. LEXIS 21911, at *3 (E.D.Cal. Nov. 17, 1995), *adopted by Bean v. Calderon*, 1996 U.S. Dist. LEXIS 21977 (E.D.Cal. Mar. 28,

1996), *aff'd in part and rev'd in part on other grounds,* 163 F.3d 1073 (9th Cir. 1998), *cert. denied,* 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999) ("Because it is an affirmative defense and because respondents move for dismissal, respondents bear the burden of establishing that California's procedural default rules are adequate to bar federal review.") (citation omitted); *Karis v. Vasquez,* 828 F.Supp. 1449, 1463 n. 21 (E.D.Cal.1993) ("Procedural default is an affirmative defense which may be waived.") (citing *Wainwright v. Sykes,* 433 U.S. 72, 80, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (procedural default a matter of comity)). We need not reach this question today, however, because our resolution of this case remains the same either way.

■■■ As Respondents concede, before *Clark,* the California untimeliness standards were applied inconsistently to some fact patterns. *Clark,* 5 Cal.4th at 763, 21 Cal.Rptr.2d 509, 855 P.2d 729; *Calderon v. U.S. District Court (Bean),* 96 F.3d 1126, 1130 (9th Cir.1996); *Morales,* 85 F.3d at 1391. In *Clark,* however, the California Supreme Court set out a definite rule for prospective application. *Clark,* 5 Cal.4th at 797–98, 21 Cal.Rptr.2d 509, 855 P.2d 729. Several federal courts have observed that California's untimeliness rule has been applied regularly and consistently since *Clark. See, e.g., Deere v. Calderon,* 890 F.Supp. 893, 900 (C.D.Cal.1995) (assessing post-*Clark* death penalty cases, "the Court finds that, beginning with petitions filed after *Clark,* the California Supreme Court has demonstrated a regular and consistent approach to its treatment of untimely petitions").

Bennett was convicted on September 17, 1986. He did not appeal his conviction nor did he file a habeas petition in the California Supreme Court until July 8, 1999. Although Bennett delayed more than six years before the *Clark* decision was ren-dered, he also delayed approximately another six years after *Clark* before he filed a state habeas petition with the California Supreme Court. Bennett's substantial, continuing delay after *Clark* demonstrates a continuous post-*Clark* default.

The district court aptly analyzed Bennett's situation:

> In sum, the 1993 *Clark* decision declared that California courts thereafter would apply the untimeliness rule consistently. Petitioner's procedural default continued to occur for almost six more years after *Clark.* There is no indication after *Clark* that the untimeliness rule has been applied inconsistently in cases involving the type of extensive delay that occurred in the present case. Therefore, the doctrine of procedural default bars the present petition, absent proof of cause and prejudice or a fundamental miscarriage of justice.

This was not a case in which the petitioner filed his state habeas petition very shortly after the *Clark* decision was announced. *See, e.g., Bean,* 96 F.3d at 1130 (finding pre-*Clark* procedural default when petitioner filed his state habeas petition in May 1994 and the California Supreme Court denied on untimeliness grounds). In this case, Bennett waited approximately six years after *Clark* was decided. Accordingly, we affirm the district court's conclusion that the procedural rule was regularly and consistently applied.

**CONCLUSION**

Because we conclude that (1) the reference by the California Supreme Court to "lack of diligence" is a reference to untimeliness as discussed in *Clark/Robbins;* (2) since *Robbins,* this ground is independent; and (3) since *Clark,* it is adequate, we hold

that the district court properly dismissed the petition as procedurally barred.

AFFIRMED.