**Ahmad J. HASAN, Petitioner–Appellant,**

v.

**George M. GALAZA, Respondent–Appellee.**

**No. 99–16336.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2001.

Filed June 22, 2001.

Jolie Lipsig, Sacramento California, for the petitioner-appellant.

Eric Share, Deputy Attorney General and Matthew P. Boyle, Deputy Attorney General, San Francisco California, for the respondent-appellee.

---

* Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

Before: HUG, and T.G. NELSON, Circuit Judges, and SHADUR,* Senior District Judge.

## OPINION

SHADUR, Senior District Judge:

California state prisoner Ahmad J. Hasan ("Hasan") appeals the district court's dismissal of his habeas petition as untimely under 28 U.S.C. § 2244(d).[1] We have jurisdiction pursuant to Section 2253. We reverse and remand for further proceedings consistent with this opinion.

### Background

In August 1993 a Contra Costa County Superior Court jury convicted Hasan of attempted first degree murder with enhancements for personal use of a weapon, infliction of great bodily harm and discharging a firearm at an occupied motor vehicle. On October 1, 1993 Hasan was sentenced to five years of incarceration for use of a weapon, followed by a consecutive life term for the attempted murder. Direct review of Hasan's conviction concluded on July 2, 1995.

Following affirmance of his conviction on direct appeal, on April 22, 1997 Hasan filed a habeas petition in the Contra Costa County Superior Court. That petition was denied on May 19, 1997. Next, on October 6, 1997 Hasan filed a habeas petition in the California Court of Appeal for the First Appellate District which was denied ten days later. Hasan then filed a habeas petition in the California Supreme Court on December 11, 1997. That petition was denied on April 29, 1998.

In the meantime, on August 27, 1997, while he was still pursuing his state habeas

1. All further citations to Title 28 provisions will simply take the form "Section–," omitting the prefatory "28 U.S.C."

remedies, Hasan filed a pro se federal habeas petition in the United States District Court for the Northern District of California. By order dated September 9, 1997 the district court dismissed the petition without prejudice because it contained unexhausted claims.[2]

Hasan filed another federal habeas petition on June 1, 1998, less than 5 weeks after he had completed the exhaustion of all available state court remedies (as we discuss later). That new petition charged a number of violations of his constitutional rights, including ineffective assistance of his trial counsel. That latter claim was based in part on the alleged failure of Hasan's counsel to investigate or to demand inquiry into possible juror misconduct.

In that respect Hasan's petition first alleged that near the end of his trial several individuals observed Willie Mae Bernard ("Bernard"), who was testifying for the

prosecution in another case, talking on a pay phone outside the courtroom. Those witnesses heard Bernard mention the name "Hasan" over the phone. Shortly thereafter one of the witnesses to the phone call observed Bernard approach Juror William Harris ("Harris"). Bernard assertedly asked Harris if he was on the Hasan jury and handed Harris a piece of paper that said "be sure to call me."

In his motion for a new trial, Hasan's then counsel mentioned the contact between Bernard and Harris but said that he had not yet been able to interview Harris or, with few exceptions, the other jurors. At the October 1, 1993 hearing on that new trial motion, Hasan's counsel did not mention the apparent juror tampering in his argument at all-let alone request a continuance to allow him to investigate the matter further. Hasan's petition further alleged that had counsel investigated the possible juror tampering further, he would have learned that at the time of trial Ber-

---

**2.** Had that petition been kept alive pending exhaustion of Hasan's state habeas remedies, rather than being dismissed, the knotty issue presented here could have been avoided. Although in a February 21, 2001 Order (No. 00–16157) another panel of this court denied Hasan's request for a certificate of appealability in that proceeding because Hasan had not made a substantial showing of the denial of a constitutional right (see Section 2253(c)(2) and (3))-a denial that we do not of course question-we note that we have twice approved (among our numerous decisions bearing the case caption *Calderon v. United States Dist. Ct.*) a "withdrawal-and-abeyance" procedure under which a petitioner is permitted to delete the unexhausted claims, so that the petition then contains only exhausted claims that are held in abeyance during the period while the other claims are presented to the state courts, after which the petition is amended to submit the now-exhausted claims as well (see 134 F.3d 981, 986 (9th Cir.1998) and 144 F.3d 618, 620–21 (9th Cir.1998)). It is true that the district court here quite properly specified that the dismissal was without prejudice, but where as in this case the limitations clock has only a day or two to continue ticking before time runs out, the practical effect of a dismissal that is nominally without prejudice may be to create a with-prejudice result (see *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir.2000), cited favorably in *Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir.2000); and relatedly, note the comparable possibility that a Fed.R.Civ.P. 4(m) "without prejudice" dismissal sometimes triggers a with-prejudice disposition in real world terms). Such a "withdrawal-and-abeyance" .procedure, which is essentially a variant on the principle that a district court must allow a petitioner to amend a mixed petition to strike unexhausted claims so that he may proceed with his exhausted claims (see *Anthony*, 236 F.3d at 574), would appear to eliminate that risk. We recognize of course the abuse-of-the-writ question left open in both of our earlier cases (134 F.3d at 988–89, 144 F.3d at 621), but we need not here address either that issue or the further question as to the current posture of that "abuse" doctrine in light of the enactment of the "second or successive petition" provisions of Section 2244.

nard was involved in a long-term romantic relationship with Terrence Williamson, one of the prosecution's witnesses in Hasan's trial.

Warden George Galaza ("Galaza") moved to dismiss Hasan's petition as untimely under Section 2244(d), part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Hasan responded that under Section 2244(d)(1)(D) the one-year time limit did not start to run until at the earliest December 1996, when Hasan learned of the romantic relationship between Williamson and Bernard from another inmate who was from the same city, or, more appropriately, until April 24, 1997, the date on which Hasan was able to secure an affidavit from Williamson verifying that information.

That argument was rejected by the district court, which held that because Hasan knew at the time of trial (1) that Bernard had spoken on the phone and mentioned his name, had passed a note to a juror and disliked his mother and (2) that trial counsel had failed to demand an inquiry into the possible juror tampering, he had sufficient facts at that time to raise an ineffective assistance of counsel claim. According to the district court, Bernard's romantic relationship with Williamson was not a necessary element of that claim. Therefore the court held his petition was untimely. Hasan appeals from that ruling.

### Timeliness of Petition

■ We review de novo the dismissal of a federal habeas petition (*Dictado v. Ducharme*, 244 F.3d 724, 726 (9th Cir. 2001)). That level of review is appropriate where, as here, the matters at issue are questions of law rather than fact.

Under Section 2244(d)(1) a state prisoner who wants collateral relief from federal court must file the federal petition within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

For prisoners such as Hasan whose convictions became final before AEDPA was enacted, we have held that unless a subsection of Section 2244(d) calls for a later initiation of the limitations period, the clock began to run on the statute's April 24, 1996 effective date and expired on April 23, 1997 (*Dictado*, 244 F.3d at 726). In dismissing Hasan's petition, the district court ruled that April 24, 1996 started the one-year clock, so that Hasan's filing after April 23, 1997 rendered his petition untimely.

■ In this instance the district court failed to apply the Section 2244(d)(2) provision that tolls the limitations period during the entire time that Hasan's state habeas petitions were pending-from April 22, 1997 (when Hasan filed his state habeas petition in the Costa County Superior Court) to April 29, 1998 (when the California Supreme Court ultimately denied his state petition) (see *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir.1999)). But given the district court's view that the clock began to run on April 24, 1996, it would have found

Hasan's petition untimely even if it had properly accounted for tolling: Hasan would have had only one day left to file his federal petition after the running of the limitations period resumed on April 29, 1998–and from that perspective his June 1, 1998 filing would have been a month too late.

■ But Hasan contends that the district court erred in finding that the statute of limitations began to run on his ineffective assistance of counsel claim on April 24, 1996. To that end he seeks to avail himself of Section 2244(d)(1)(D), claiming that he did not discover the factual predicate of his ineffective assistance of counsel claim, so that the clock did not start to tick, until he learned of the relationship between Bernard and Williamson.

■ That argument is persuasive. As the seminal decision in *Strickland v. Washington,* 466 U.S. 668, 687–91, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) teaches, to establish ineffective assistance of counsel, a party must demonstrate (1) that counsel's performance was unreasonable under prevailing professional standards and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different (see also *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir.2001)). And so to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance *and* resulting prejudice.

Here the district court was correct in concluding that Hasan had knowledge at the time of trial of some facts to support an assertion that his trial counsel's performance was deficient to an extent. Hasan does not dispute that he knew at that time that there may have been jury tampering and that his counsel did not properly investigate it or request a continuance to do so. But more critically, Hasan did not know at that time-nor did he have reason to know-what he later learned: the added facts that such an investigation would have revealed. It cannot be gainsaid that Hasan could not have asserted at that time, in objective good faith, that he was prejudiced as a result of his counsel's deficient performance-indeed, he was expressly told as much by his appointed appellate counsel. And even before that, in its Memorandum responding to Hasan's motion for a new trial the prosecution successfully advanced a position that the later-discovered facts showed to be inaccurate:

> Willie Mae Bernard had no connection with the defendant's case in any way whatsoever and there has been no showing of misconduct on the part of Mr. William Harris, juror # 7.

■ By contrast, when Hasan later learned of the romantic relationship between Bernard and Williamson, the situation changed materially: At that point Hasan had reasonable grounds for asserting that had his counsel investigated properly, he would have learned of the relationship and could have contested the prosecution's representation. Only then did Hasan have a good faith basis for arguing prejudice-that is, that had his counsel investigated and brought this information before the trial court, the trial court may have ordered a new trial.[3]

---

**3.** This is not to say that Hasan needed to understand the legal significance of those facts-rather than simply the facts themselves-before the due diligence (and hence the limitations) clock started ticking. As *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir.2000) has

observed in stressing the objective standard under Section 2241(d)(1):

> Time begins when the prisoner knows (or through diligence could discover) the im-

By looking only at the time Hasan discovered that his counsel's performance was deficient (the first prong of an ineffective assistance of counsel claim under *Strickland* ), the district court failed to consider at what point Hasan discovered (or could have discovered) that he was prejudiced as a result (the essential second prong of any such claim). That reasoning is analogous to holding that a tort claim accrued when the plaintiff had knowledge of her injury but before she had discovered the cause (or could have done so in the exercise of due diligence).

Because there is no evidence in the record from which it can be determined when with the exercise of due diligence Hasan could have discovered the relationship between Bernard and Williamson (or any other factual predicate to support the prejudice prong of his ineffective assistance of counsel claim), this case must be remanded for further factual findings on that issue. If Hasan did not have, or with the exercise of due diligence could not have had, knowledge of the factual predicate of both elements of his claim until on or after May 24, 1996, his June 1, 1998 filing was timely.[4]

REVERSED and REMANDED.

---

portant facts, not when the prisoner recognizes their legal significance.

4. May 24, 1996 is the earliest date on which Hasan could have discovered the factual predicate of the claim through the exercise of due diligence and still be able to find shelter in Section 2244(d)(1)(D). If May 24, 1996 were the operative date, the limitation period would have run from then until April 22, 1997, the date on which Hasan initiated his state habeas proceedings (at which point the clock would have been ticking for two days short of eleven months). Then the clock would have remained frozen until April 29, 1998, when the California Supreme Court denied his habeas petition. When the clock resumed ticking, Hasan would have had a month and two days to file a timely habeas petition, so that his June 1, 1998 filing would have come in just under the limitations wire. Of course if the district court finds that Hasan could not have discovered the factual predicate of his claim with the exercise of due diligence until some time after May 24, 1996, his filing would fall well within the limitations period.