**Joseph Murl BENNETT, Petitioner–Appellant,**

v.

**Glen MUELLER, Warden; Cal Terhune, Director; Attorney General of the State of California, Respondents–Appellees.**

No. 00–56199.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 2001.

Petition for Rehearing Granted
May 31, 2002.

Resubmitted July 9, 2002.*

As Amended on Denial of Rehearing
En Banc March 4, 2003.

---

\* This panel unanimously finds the rehearing of
this case suitable for decision without oral argument.

Tina Long Rippy, Esq., Attorney at Law, Whittier, California, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California; David P. Druliner, Chief Assistant Attorney General; Marc E. Turchin, Acting Senior Assistant Attorney General; Marc J. Nolan, Deputy Attorney General; Gary A. Lieberman, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before BRUNETTI, RYMER, and WARDLAW, Circuit Judges.

## ORDER

WARDLAW, Circuit Judge:

The opinion published at 296 F.3d 752 (9th Cir.2002) is hereby AMENDED as follows:

Page 760, ¶ 3: Delete the sentence beginning "While it is true" to the end of the paragraph (including fn.2), and replace with the following:

Because the California Supreme Court set out to create a rule that would be consistently applied, however, it does not follow that the rule in historical fact has been so applied. A few district courts have had the opportunity to analyze the consistency of application of the *Clark* rule, reaching opposing results. *See, e.g., Deere v. Calderon,* 890 F.Supp. 893 (C.D.Cal.1995) (concluding that the *Clark* rule has been consistently applied

in capital cases); *Coleman v. Calderon,* No. C 89–1906 RMW, 1996 WL 83882, at *3 (N.D.Cal.1996) (holding that there is a "genuine question about whether California has applied [the *Clark* ] rule consistently and regularly"), *aff'd on other grounds,* 150 F.3d 1105 (9th Cir.), *rev'd on other grounds,* 525 U.S. 141, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998). Of course, neither we nor the district court in this case is bound by these decisions.

Page 761, ¶ 1: Delete this paragraph & fn.3

Page 761, ¶ 2: Delete fn.4 and insert the following text in the paragraph at the location where the footnote was marked:

Thus, it was inappropriate for the district court to rely on *Deere* for two reasons: first, *Deere* analyzed the application of California's procedural bar only in capital habeas cases, 890 F.Supp. at 899, while *Bennett* involves a noncapital habeas case. California's rules governing timeliness in capital cases differ from those governing noncapital cases, *id.* at 897 (quoting California Supreme Court Policies Regarding Cases Arising From Judgments of Death, Timeliness Standards).[FN2] Second, the *Deere* district court followed a procedure in analyzing the question that is inconsistent with our precedent; it analyzed the basis for the state court decisions denying post-conviction relief based on a *post hoc* examination of the pleadings and record rather than the text of the state court opinions. While we have not decided, and do not decide this precise issue in this context, our precedent suggests any review should be limited to the language of the state court opinions. *See, e.g., Valerio v. Crawford,* 306 F.3d 742, 774–75 (9th Cir.2002) (en banc); *Bean,* 96 F.3d at 1131.

[FN2] This distinction was apparently missed by the district courts in *Allard v.*

*Olivarez,* No. C 97–1009 FMS (PR), 1998 WL 19468 (N.D.Cal.), *aff'd on other grounds,* 1998 WL 598443 (9th Cir.1998), and *Washington v. Cambra,* No. C 97–2316 CRB (PR), 1998 WL 164967 (N.D.Cal.1998), *rev'd on other grounds,* 208 F.3d 832 (9th Cir.2000), non-capital cases that relied on *Deere,* as well as by the district court here, which quoted both of these cases in support of its holding.

Page 761, ¶ 2: After the above insertion, delete the sentence beginning "Because the California Supreme Court ..." and start a new paragraph before the next sentence, beginning "Because there is a genuine question ..."

Page 762, ¶ 3: Renumber footnote 5 as footnote 3

With these amendments, the panel has voted unanimously to deny the petition for panel rehearing. Judges Rymer and Wardlaw have voted to deny the petition for en banc rehearing, and Judge Brunetti has so recommended.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petitions for panel rehearing and for rehearing en banc are DENIED. No further petitions for rehearing will be entertained.

It is so ORDERED.

### OPINION

WARDLAW, Circuit Judge:

Joseph Murl Bennett appeals the district court's order adopting the Magistrate Judge's Report and Recommendation denying his Petition for Writ of Habeas Corpus on the state procedural ground of untimeliness. We must decide whether the district court erred in concluding that the

California Supreme Court's denial of Bennett's petition "on the merits and for lack of diligence" constituted an independent and adequate state ground so as to render his habeas petition procedurally defaulted. In so doing, we must determine whether the state court's reliance upon *In re Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (Cal.1993), and *In re Robbins,* 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311 (Cal.1998), for untimeliness is free from entanglement with federal law and based upon a well-established and consistently applied rule. We agree with the district court that reliance upon *Clark* and *Robbins* constitutes an independent state ground. We must reverse on the question of adequacy, however, because we cannot conclude on this record that California has regularly and consistently applied the untimeliness bar in habeas cases. We remand this question to the district court to reconsider under the appropriate burden-shifting rule, which we outline below. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm in part, reverse in part, and remand.

## I. Background

In 1986, Bennett pled guilty to first-degree burglary in Los Angeles Superior Court Case No. A468635. In the guilty plea form, signed by Bennett and his counsel, Bennett acknowledged: "I understand the court may send me to state prison for a maximum of 6 years." The plea agreement further provided:

"If defendant pleads in case # A470545 and # A470930, this case will be 16 months consecutive to any sentence in those cases."

At sentencing, Bennett attempted to withdraw his guilty plea and enter a plea of not guilty. He claimed it was his understanding, although his memory was, admittedly, "very vague," that he was to receive 16 months on this case regardless of whether he pled guilty in the two other cases. The trial court denied Bennett's motion and, finding the aggravating circumstances of his crime (a nighttime residential burglary) substantial, sentenced him to a prison term of six years. The trial court clarified that the other two cases remained pending; therefore, an open plea remained if he wished to plead guilty to the other cases.

Refusing to plead guilty to the remaining cases, Bennett requested a jury trial, thus terminating his plea agreement. He was convicted by jury in consolidated case Nos. A470545 and A470930 of two counts of first-degree burglary, forcible rape, forcible oral copulation, forcible sexual penetration with a foreign object, sodomy by force, and assault to commit rape. Bennett's combined sentence totaled forty-two years and four months, which was later reduced by one year, making his total term forty-one years and four months.

Bennett did not pursue a direct appeal after his guilty plea and conviction in 1986. Instead, twelve years after his conviction, in 1998, he filed a "Motion for Transcripts" in the California Superior Court, arguing that he was improperly sentenced. The Superior Court denied the motion, finding that his contention "was raised, discussed, ... resolved ... [and] without merit." Bennett later filed a Petition for Writ of Habeas Corpus in the Superior Court, which was denied as showing no grounds for relief. He next filed a Petition for Writ of Habeas Corpus in the same case with the California Court of Appeal, which, on May 25, 1999, denied the petition without comment or citation to authority. On July 8, 1999, Bennett filed a Petition for Writ of Habeas Corpus in the California Supreme Court, which, on November, 23, 1999, denied the petition "on the merits and for lack of diligence."

Bennett then filed this Petition for Writ of Habeas Corpus in the United States District Court. Bennett claims that (1) the trial court erred in failing to admonish him regarding the nature and effect of the plea agreement, rendering his guilty plea unknowing and involuntary; (2) the trial court abused its discretion in failing to reasonably consider the motion to withdraw his plea; and (3) his trial counsel was ineffective at the taking of and motion to withdraw the plea, and in failing to appeal. Respondents brought a motion to dismiss for procedural default, which Bennett opposed. The magistrate judge issued a Report and Recommendation, recommending that the district court deny and dismiss the petition with prejudice. On June 5, 2000, the district court adopted the Report and Recommendation and entered judgment denying and dismissing the petition with prejudice. On June 15, 2000, Bennett filed a notice of appeal and request for certificate of appealability in the district court. The district court denied the request. A motions panel of this court then granted a certificate of appealability on the question whether the state court's citation to *Clark* and *Robbins* constituted an independent and adequate state bar so as to render the petition procedurally defaulted.

## II. Procedural Default

■ Bennett argues that the district court erroneously concluded that his date of default occurred after the decisions of *Clark* and *Robbins*. Bennett asserts that because he was convicted in 1986, before the decisions issued in 1993 (*Clark*) and 1998 (*Robbins*), the untimeliness rule created by those decisions cannot apply to him. The cases Bennett cites, however, do not stand for this proposition. Rather, the common theme of these cases is that when the habeas proceeding has been initiated before the Clark/Robbins decisions were announced, the untimeliness rule cannot

stand as an independent and adequate state ground barring federal habeas review. *See, e.g., Fields v. Calderon,* 125 F.3d 757, 759 (9th Cir.1997) (petitioner who filed habeas petition in 1984 cannot be procedurally barred for untimeliness); *Calderon v. United States Dist. Court (Hayes),* 103 F.3d 72, 73 (9th Cir.1996) (petitioner who filed habeas petition in 1987 cannot be procedurally barred for untimeliness); *see also Calderon v. United States Dist. Court (Bean),* 96 F.3d 1126, 1131 (9th Cir.1996) (evaluating procedural default "at the time [petitioner] filed his direct appeal").

This is not a case in which the petitioner filed his state habeas petition before or very shortly after the *Clark* decision was announced. *Cf. Bean,* 96 F.3d at 1130 (finding pre-*Clark* procedural default when petitioner filed his state habeas petition in May 1994 and the California Supreme Court denied on untimeliness grounds). Bennett was convicted on September 17, 1986. He did not appeal his conviction or file a habeas petition in the California Supreme Court until July 8, 1999. Although Bennett delayed more than six years before the *Clark* decision was rendered, he also delayed approximately another six years after *Clark* before he filed a state habeas petition with the California Supreme Court. Bennett's substantial, continuing delay after *Clark* issued is a continuous post-*Clark* default.

■ The California Supreme Court has long required that a petitioner in a habeas corpus proceeding justify any substantial delay in seeking relief. *In re Stankewitz,* 40 Cal.3d 391, 396 n. 1, 220 Cal.Rptr. 382, 708 P.2d 1260 (Cal.1985); *In re Swain,* 34 Cal.2d 300, 302, 209 P.2d 793 (Cal.1949). While we have yet to determine the minimum amount of time that constitutes a substantial delay, we conclude that Ben-

nett's six year post-*Clark* default certainly suffices.

■ Bennett next argues that the state court's citation to *Clark* and *Robbins* did not constitute an independent and adequate state ground so as to render his habeas petition procedurally defaulted. Although none of the California decisions actually cited to *Clark* or *Robbins,* we have previously held that the California Supreme Court's denial of a habeas petition, citing only "lack of diligence," is an application of the untimeliness bar. *La Crosse v. Kernan,* 244 F.3d 702, 705 (9th Cir.2001) ("[T]he California Supreme Court was applying the untimeliness bar because [petitioner] delayed nearly twelve years between his direct appeal and his state petition for habeas corpus."). Bennett waited twelve years after his conviction before filing his habeas petition. Therefore, in light of the state court's postcard denial, "on the merits and for lack of diligence," the district court was correct to conclude that the California Supreme Court was applying the untimeliness bar, as explained in both *Clark* and *Robbins.*

■ Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *La Crosse,* 244 F.3d at 704. Although the California Supreme Court denied Bennett's state habeas petition both on the merits as well as for lack of diligence, and thus considered the merits of Bennett's claim, we must nevertheless examine whether denial for lack of diligence rested on an independent and adequate state procedural ground. If so, Bennett is procedurally barred from pursuing his claims in federal court. A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim. *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992); *Thomas v. Lewis,* 945 F.2d 1119, 1123 (9th Cir.1991). Unless a state court's decision "fairly appears" to rest primarily upon federal law, we should not assume that the state judgment failed to rely exclusively on its own sovereign principles. *Coleman,* 501 U.S. at 737, 111 S.Ct. 2546 ("In those cases in which it does not fairly appear that the state court rested its decision primarily on federal grounds, it is simply not true that the 'most reasonable explanation' is that the state judgment rested on federal grounds.").

■ "For the procedural default rule to apply, however, the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." *Park v. California,* 202 F.3d 1146, 1151 (9th Cir.2000) (quoting *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546). If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Noltie v. Peterson,* 9 F.3d 802, 804–05 (9th Cir.1993); *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Park,* 202 F.3d at 1150.

Because we conclude that the state procedural ground of untimeliness was invoked even without direct citation to *Clark* and *Robbins,* we next consider whether reliance on these cases constitutes an independent and adequate state ground barring federal habeas relief.

### III. Independence

 We conclude that because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground, as expressed in *Clark/Robbins.* "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *La Crosse,* 244 F.3d at 704 (citing *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)); *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir.1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law.'" (quoting *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546)). "A state law ground is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" *Park,* 202 F.3d at 1152 (quoting *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). " '[U]nless the state court makes clear that it is resting its decision denying relief on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds, and the petitioner may seek relief in federal court.'" *La Crosse,* 244 F.3d at 704 (citation omitted).

 The California Supreme Court has explained that the untimeliness rule requires that a petitioner in a habeas corpus proceeding justify any substantial delay in seeking relief. *In re Stankewitz,* 40 Cal.3d at 396 n. 1, 220 Cal.Rptr. 382, 708 P.2d 1260; *In re Swain,* 34 Cal.2d at 302, 209 P.2d 793. Significant, unjustified delay in presenting habeas corpus claims to California state courts will bar consideration of the merits of the claims. Delay "is measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." *Robbins,* 18 Cal.4th at 787, 77 Cal.Rptr.2d 153, 959 P.2d 311; *Clark,* 5 Cal.4th at 765 n. 5, 21 Cal.Rptr.2d 509, 855 P.2d 729 ("Delay in seeking habeas corpus or other collateral relief has been measured from the time a petitioner becomes aware of the grounds on which he seeks relief. That time may be as early as the date of conviction.") (citation omitted).

On August 3, 1998, in *Robbins,* the California Supreme Court made clear that it would no longer consider federal law in denying a petition on untimeliness grounds. It recognized that, when reviewing state habeas petitions for the untimeliness ground embodied in *Clark* (as well as for distinct procedural grounds embodied in *Ex Parte Dixon,* 41 Cal.2d 756, 759, 264 P.2d 513 (Cal.1953) and *In re Harris,* 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (Cal.1993)), California courts previously considered the federal constitutional merits of the petitions in determining whether the petitions qualified for an exception to the rule of procedural default. *Robbins,* 18 Cal.4th at 812 n. 32, 814 n. 34, 77 Cal.Rptr.2d 153, 959 P.2d 311. The court then declared, however, that henceforth California courts would no longer determine whether an error alleged in a state petition constituted a federal constitutional violation:

> [W]e shall assume, for the purpose of addressing the procedural issue, that a federal constitutional error is stated, and we shall find the exception inapposite if, based upon our application of state law, it cannot be said that the asserted error 'led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner.'

*Id.* at 811–812, 77 Cal.Rptr.2d 153, 959 P.2d 311 (quoting *Clark,* 5 Cal.4th at 797, 21 Cal.Rptr.2d 509, 855 P.2d 729). The Court further announced that:

> [W]henever we apply the first three *Clark* exceptions, we do so exclusively by reference to state law. When we apply the fourth *Clark* exception, we apply federal law in resolving any federal constitutional claim.

*Robbins,* 18 Cal.4th at 812 n. 32, 77 Cal. Rptr.2d 153, 959 P.2d 311.[1]

We have since held that a California court's pre-*Robbins* denial of a state habeas petition for a *Dixon* violation does not bar subsequent federal review, and that the state court's discussion of the *Dixon* rule should apply equally to the *Clark* untimeliness rule. *Park,* 202 F.3d at 1152, 1152 n. 3. In *Park,* we observed that, as acknowledged in *Robbins,* the California Supreme Court previously addressed the merits of fundamental constitutional claims when applying the *Dixon* rule. *Id.* Thus, before *Robbins,* the *Dixon* rule was "interwoven" with, and not independent from, federal law. *Id.*

We declined to determine in *Park* "whether *Robbins* establishes the independence of California's *Dixon* rule for the future." *Park,* 202 F.3d at 1153. We nevertheless suggested that, for post-*Robbins* California Supreme Court denials, the analysis may be substantially different:

> The California Supreme Court has adopted in *Robbins* a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted.... The purpose of this approach was to establish the adequacy and independence of the State Supreme Court's future *Dixon*/Robbins rulings and to indicate that a prisoner

seeking collateral relief with respect to new federal claims no longer had any recourse to exhaust in the state courts.... *Robbins* is clear, however, that its new approach is prospective.

*Id.* at 1152–53, 1152 n. 4.

 Moreover, Bennett's claim that the interpretation of state constitutional principles and federal constitutional principles are necessarily intertwined is misguided. While it is true "that state courts will not be the final arbiters of important issues under the federal constitution; [it is equally true] that [the federal courts] will not encroach on the constitutional jurisdiction of the states." *Minnesota v. Nat'l Tea Co.,* 309 U.S. 551, 557, 60 S.Ct. 676, 84 L.Ed. 920 (1940). " 'It is fundamental that state courts be left free and unfettered by [the federal courts] in interpreting their state constitutions.' " *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (quoting *Minnesota,* 309 U.S. at 557, 60 S.Ct. 676). "This is not a mere technical rule nor a rule for our convenience. It touches the division of authority between state courts and[federal courts] and is of equal importance to each. Only by such explicitness can the highest courts of the states and [federal courts] keep within the bounds of their respective jurisdictions." *Minnesota,* 309 U.S. at 557, 60 S.Ct. 676.

Therefore, we respect the California Supreme Court's sovereign right to interpret its state constitution independent of the federal law. Applying *Robbins* prospectively, we affirm the district court's determination that the California Supreme Court's post-*Robbins* denial of Bennett's state petition for lack of diligence (untimeliness) was not interwoven with federal law

---

1. The fourth *Clark* exception, "that the petitioner was convicted or sentenced under an invalid statute," has not been raised by Bennett and, thus, is not relevant to this case.

and therefore is an independent procedural ground.

## IV. Adequacy

 Conversely, we cannot conclude, on the record before us, that the untimeliness rule is an adequate state procedural ground. To be deemed adequate, the state law ground for decision must be well-established and consistently applied. *Poland v. Stewart,* 169 F.3d 573, 577 (9th Cir.1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.") (quoting *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate to support a state decision, *Wood v. Hall,* 130 F.3d 373, 376 (9th Cir.1997), to be considered adequate, the discretion must entail " 'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.' " *Id.* at 377 (quoting *Morales,* 85 F.3d at 1392). State rules that are too inconsistently or arbitrarily applied to bar federal review "generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants ... and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claim is unfair." *Id.*

Before *Clark,* the California untimeliness standards were applied inconsistently to some fact patterns. *Clark,* 5 Cal.4th at 763, 21 Cal.Rptr.2d 509, 855 P.2d 729; *Bean,* 96 F.3d at 1130; *Morales,* 85 F.3d at 1391. In *Clark,* however, the California

Supreme Court attempted to set out a definite rule for prospective application. *Clark,* 5 Cal.4th at 797–98, 21 Cal.Rptr.2d 509, 855 P.2d 729. Because the California Supreme Court set out to create a rule that would be consistently applied, however, it does not follow that the rule in historical fact has been so applied. A few district courts have had the opportunity to analyze the consistency of application of the *Clark* rule, reaching opposing results. *See, e.g., Deere v. Calderon,* 890 F.Supp. 893 (C.D.Cal.1995) (concluding that the *Clark* rule has been consistently applied in capital cases); *Coleman v. Calderon,* No. C 89–1906 RMW, 1996 WL 83882, at *3 (N.D.Cal.1996) (holding that there is a "genuine question about whether California has applied[the *Clark* ] rule consistently and regularly"), *aff'd on other grounds,* 150 F.3d 1105 (9th Cir.), *rev'd on other grounds,* 525 U.S. 141, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998). Of course, neither we nor the district court in this case is bound by these decisions.

Here, the district court observed that "California's timeliness rule now appears to be 'adequate.' " It based this conclusion almost entirely in reliance upon the *Deere* opinion, and its progeny. Thus, it was inappropriate for the district court to rely on *Deere* for two reasons: first, *Deere* analyzed the application of California's procedural bar only in capital habeas cases, 890 F.Supp. at 899, while *Bennett* involves a noncapital habeas case. California's rules governing timeliness in capital cases differ from those governing noncapital cases, *id.* at 897 (quoting California Supreme Court Policies Regarding Cases Arising From Judgments of Death, Timeliness Standards).[2] Second, the *Deere* dis-

---

**2.** This distinction was apparently missed by the district courts in *Allard v. Olivarez,* No. C 97–1009 FMS (PR), 1998 WL 19468

(N.D.Cal.), *aff'd on other grounds,* 1998 WL 598443 (9th Cir.1998), and *Washington v. Cambra,* No. C 97 2316 CRB (PR), 1998 WL

trict court followed a procedure in analyzing the question that is inconsistent with our precedent; it analyzed the basis for the state court decisions denying post-conviction relief based on a *post hoc* examination of the pleadings and record rather than the text of the state court opinions. While we have not decided, and do not decide this precise issue in this context, our precedent suggests any review should be limited to the language of the state court opinions. *See, e.g., Valerio v. Crawford,* 306 F.3d 742, 774–75 (9th Cir.2002) (en banc); *Bean,* 96 F.3d at 1131.

Because there is a genuine question whether the untimeliness bar is adequate, and the record before us does not provide a means for answering this question, we must remand the question of adequacy of California's untimeliness bar to the district court. There, the resolution of the issue may depend on the question of which party bears the ultimate burden of proof.

## V. Burden of Proof

The district court concluded that Bennett bears the burden of establishing that the state procedural rule was not consistently and regularly applied, relying on *Wood v. Hall,* 130 F.3d 373 (9th Cir.1997). In *Wood,* however, we did not specifically address who bears the burden of proof on this question. On that point, all that we stated was that Wood had "not presented sufficient evidence" that Oregon's application of the state procedural bar at issue was inconsistently applied. *Wood,* 130 F.3d at 377. We did not decide which party bears the ultimate burden of proof on the question of procedural bar; rather, the opinion focused on the question whether inherent discretion in a rule's application precludes it from being deemed

adequate. Thus, this case requires us to decide as a matter of first impression in this circuit where the ultimate burden of proof lies. The two circuits that have addressed the question have diverged in their conclusions.

The Fifth Circuit has placed the burden upon the petitioner. *Sones v. Hargett,* 61 F.3d 410 (5th Cir.1995). In *Sones,* the Fifth Circuit treated the doctrine of procedural default as creating a presumption that "a state court's reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id.* at 416. Nevertheless, it acknowledged that "[t]he presumption of adequacy can be rebutted in certain circumstances . . ., if the state's procedural rule is not 'strictly or regularly followed.' " *Id.* (citations omitted). It placed the burden of showing that the untimeliness rule was not regularly followed upon the petitioner. *Id.* at 417; *see also Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir.1997) ("[P]etitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal.").

In contrast, the Tenth Circuit employs a burden-shifting analysis that places the ultimate burden of proving the adequacy of a state procedural rule upon the state. *Hooks v. Ward,* 184 F.3d 1206 (10th Cir. 1999). Its rule is:

> Once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner. This must be done, at a minimum, by specific allegations by the petitioner as to the adequacy of the state procedure. The scope of the state's bur-

---

164967 (N.D.Cal.1998), *rev'd on other grounds,* 208 F.3d 832 (9th Cir.2000), noncapital cases that relied on *Deere,* as well as by

the district court here, which quoted both of these cases in support of its holding.

den of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner."

*Hooks,* 184 F.3d at 1217; *see also Smallwood v. Gibson,* 191 F.3d 1257 (10th Cir. 1999) (same).

In *Hooks,* the court reasoned that "the state is undoubtedly in a better position to establish the regularity, consistency and efficiency with which it has applied [its procedural bar] than are habeas petitioners, who often appear pro se, to prove the converse." *Hooks,* 184 F.3d at 1216–17; *see also Cannon v. Gibson,* 259 F.3d 1253, 1273 n. 20 (10th Cir.2001) ("We conclude that the state bears the burden of proving the adequacy of a state procedural bar in order to preclude federal habeas corpus review.") (citation omitted); *Beavers v. Saffle,* 216 F.3d 918, 923 (10th Cir.2000) (same); *Smallwood,* 191 F.3d at 1268 (same).[3]

■■■ We prefer the approach outlined by the Tenth Circuit. Unlike the Fifth Circuit, we have never presumed the adequacy of a state procedural rule, but rather have examined whether the law has in fact been regularly and consistently applied. Moreover, there is good reason to place the burden of proving adequacy on the state, the most obvious of which is that procedural default is an affirmative defense. *Gray v. Netherland,* 518 U.S. 152, 165, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) ("[S]tate-court procedural default ... is an affirmative defense."). As an affirmative defense, the state must plead, and it follows, prove the default. As the Supreme Court stated in *Gray,* it is the obligation of the state "to raise procedural default as a defense, or lose the right to assert the defense thereafter." *Id.* at 166, 116 S.Ct.

2074; *O'Neal v. McAninch,* 513 U.S. 432, 444, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (party asserting affirmative defense "bears the risk of equipoise"); *Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 906 n. 1 (9th Cir.1986) ("A state may waive procedural default by failing to raise it in federal court.").

Although the burden of proving an affirmative defense is generally on the party asserting it, in this context, this placement is also the most just. It is the state, not the petitioner, often appearing pro se, who has at its hands the records and authorities to prove whether its courts have regularly and consistently applied the procedural bar. *See Hooks,* 184 F.3d at 1216–17; 2 McCormick on Evidence § 337, at 431 (John W. Strong ed., 4th ed. 1992) ("If proof of the facts is inaccessible ... it is usually fairer ... to place the burden of proof and persuasion on the party claiming its existence."); *see also United States v. New York, N.H. & H.R. Co.,* 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."); *ITSI TV Producs., Inc. v. Agric. Ass'ns,* 3 F.3d 1289, 1292 (9th Cir. 1993) (" '[W]hen true facts relating to [a] disputed issue lie peculiarly within the knowledge of' one party, the burden of proof may properly be assigned to that party 'in the interest of fairness.' " (citing *United States v. Hayes,* 369 F.2d 671, 676 (9th Cir.1966)); *Browzin v. Catholic Univ. of Am.,* 527 F.2d 843, 849 n. 12 (D.C.Cir. 1975) (same)).

■■■ Thus, we conclude that the ultimate burden of proving the adequacy of

**3.** In a well-reasoned opinion, Judge Karlton of the Eastern District of California has reached a similar conclusion. *Karis v. Vasquez,* 828 F.Supp. 1449, 1463 n. 21 (E.D.Cal. 1993) (burden of proving the adequacy of California procedural bar should be placed upon the state). *See also Coleman,* 1996 WL 83882, at *4 ("In the absence of other authority, the court will follow the reasoning of *Karis* ....").

the California state bar is upon the State of California. This conclusion is not inconsistent with our holding in *Wood* that the petitioner there had not put forth sufficient evidence of inconsistency. Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

Accordingly, because it is the State who seeks dismissal based on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is applicable—in this case that the state procedural rule has been regularly and consistently applied in habeas actions. Because neither the district court nor the parties could have anticipated this new standard, we remand for a fresh determination of the adequacy of the state ground in accordance with the rule we adopt today.

## CONCLUSION

We conclude that the reference by the California Supreme Court to "lack of diligence" is a reference to untimeliness as discussed in *Clark/Robbins* and that since *Robbins*, "untimeliness" is an independent state ground. Whether it is also an adequate state ground must be determined by the district court upon remand under the burden of proof principles we have set forth today.

**AFFIRMED** in part; **REVERSED** in part; and **REMANDED**.