**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES EDWARD KING,
  *Petitioner-Appellant,*

v.

A. LAMARQUE, Warden,
  *Respondent-Appellee.*

No. 05-15757

D.C. No.
CV-00-01988-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Yvonne Illston, District Judge, Presiding

Argued and Submitted
March 14, 2006—San Francisco, California

Filed July 26, 2006

Before: Alfred T. Goodwin, Stephen Reinhardt, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins;
Concurrence by Judge Reinhardt

**COUNSEL**

Matthew Dale Alger, Clovis, California, for the petitioner-appellant.

Lisa Ashley Ott, Deputy Attorney General, San Francisco, California, for the respondent-appellee.

**OPINION**

HAWKINS, Circuit Judge:

James Edward King ("King") appeals the denial of his habeas corpus petition, raising four issues, only one of which was listed within the Certificate of Appealability ("COA") at the time of argument. Three of the issues pertain to the Cali-

fornia Supreme Court's dismissal of an ineffective assistance claim because it determined that King's habeas petition was filed after substantial delay. King asserts that the rule is inadequate and that his case fits the exceptions that allow federal courts to review claims that are otherwise procedurally barred. His fourth claim asserts the district court erred in finding that he was not prejudiced by his trial counsel's failure to review a videotape of the victim and failure to object to a reference to his parole officer within that tape.[1]

## FACTS AND PROCEDURAL HISTORY

A jury convicted King of violating California Penal Code §§ 288 and 269 by committing a lewd act and three aggravated assaults—rape, oral copulation, and digital penetration —on a child. King pursued direct appeal and state habeas corpus petitions, both of which were unsuccessful.

King's first federal habeas petition contained exhausted and unexhausted claims. After King's attorney failed to respond to the government's motion to dismiss, the district court dismissed the petition. King submitted a pro se motion under Rule 60(b) of Civil Procedure, and the district court set aside the judgment of dismissal, finding that King's counsel had been grossly negligent. The district court stayed its proceedings while King pursued his unexhausted claims in state court. The California Supreme Court summarily denied King's subsequent habeas petition, citing two cases barring review of habeas petitions filed after substantial delay: *In re Clark*, 855 P.2d 729 (Cal. 1993) [hereinafter *Clark*], and *In re Robbins*, 959 P.2d 311 (Cal. 1998). King then filed, and the district court denied, an amended habeas petition.

---

[1]Applying the relevant standards we grant King's motion to expand the COA with regard to his claim addressing the adequacy of California's "substantial delay" rule, but deny his motion with regard to his other uncertified issues. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000).

## STANDARD OF REVIEW

We review a district court's decision to grant or deny a habeas corpus petition de novo. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

## DISCUSSION

## I

**[1]** Federal courts will not generally review a question of federal law decided by a state court if its decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). King claims that California's rule barring review of habeas claims filed after "substantial delay" is inadequate and, therefore, does not bar federal review of his claim. To be adequate, the state's legal grounds for its decision must be firmly established and consistently applied. *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003).

To be firmly established or consistently applied, a rule must be clear and certain. *See Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir. 2002) (citing *Morales v. Calderon*, 85 F.3d 1387, 1390-92 (9th Cir. 1996)); *see also Wells v. Maass*, 28 F.3d 1005, 1010 (1994) ("a state rule must be clear, consistently applied, and well-established"). Novel procedural rules do not bar federal review because petitioners are not put on sufficient notice that they must comply. *See Ford v. Georgia*, 498 U.S. 411, 423-25 (1991); *NAACP v. Alabama*, 357 U.S. 449, 354-358 (1958). Just so, state procedural rules with overly vague standards do not provide petitioners with sufficient notice of how they may avoid violating the rule. Furthermore, poorly defined procedural rules do not provide courts the guidance required for consistent application.

**[2]** California's timeliness rule bars habeas petitions that are filed after "substantial delay." A habeas petitioner in Cali-

fornia must justify any "significant" or "substantial" delay in seeking habeas corpus relief. *Clark*, 855 P.2d at 738, 750-51. There are no standards for determining what period of time or factors constitute "substantial delay" in noncapital cases. There are also no standards for determining what factors justify any particular length of delay. The rule's ambiguity is not clarified by the California Supreme Court's application of the timeliness bar, in part because the court usually rejects cases without explanation, only citing *Clark* and *Robbins*, as it did here. *See Morales*, 85 F.3d at 1392.

**[3]** California's timeliness rule applies to both capital and noncapital cases. In capital cases, California's Supreme Court Policies Regarding Cases Arising from Judgments of Death ("Policies") create a presumption of timeliness if a petition "is filed within 90 days of the final due date for the filing of an appellant's reply brief." *Clark*, 855 P.2d at 751. The Policies also create more explicit standards for deciding whether there has been substantial delay when the petitioner has filed after the ninety-day presumption period. *Id.* at 751-53. *Clark* clarified the application of these Policies within capital cases and provided four specific exceptions for granting review even when a petition's "substantial delay" is unjustified. *Id.* at 758-59. But *Clark* did nothing to clarify the application of the basic "substantial delay" standard with regard to noncapital cases. Furthermore, the *Clark* exceptions, specifying when review can be granted despite "substantial delay," do nothing to clarify the "substantial delay" standard itself.

**[4]** In *Morales*, we indicated that California's timeliness rule was too uncertain, pre-*Clark*, to be a procedural bar for capital cases. 85 F.3d at 1391; *see also Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1131 (9th Cir. 1996). The holding in *Morales* intertwined "inconsistent application" analysis with "well established" analysis: "We find so much variation in [the] application of California's timeliness requirements before *Clark* that we conclude that no discernible clear rule then existed for petitions filed more than 90

days after the due date of the reply brief on direct appeal." *Id.* Just as inconsistent application leads to ambiguous standards, overly ambiguous standards almost inevitably lead to inconsistent application. *See Bennett*, 322 F.3d at 573, 583 (citing *Morales*, 85 F.3d at 1392).

**[5]** *Bennett* specifies the burden-shifting process involved in determining whether a procedural rule is adequate. 322 F.3d at 586. Once the government has pleaded "the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." *Id.* The petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* The burden then shifts back to the government, and it bears "the ultimate burden of proving the adequacy" of the relied-upon ground. *Id.* at 585-86.

The government explicitly pleaded "the existence of an independent and adequate state procedural ground," the California rule against petitions filed after substantial delay, as an affirmative defense in district court. The burden, therefore, shifted to King. *Bennett*, 322 F.3d at 586.

In response, King asserts that the California Supreme Court's dismissal of his case demonstrates that it inconsistently applies the timeliness rule because he properly justified his delay. As the district court noted, this is not proof of inconsistent application, but simply rehashes the merits of his arguments before the California Supreme Court.

King fails to explicitly raise the issue of whether the timeliness rule is too uncertain to be well established. The question then arises: Is simply contesting the adequacy of a state rule sufficient to meet the petitioner's burden under *Bennett* if we have previously found the rule to be too ambiguous to bar

federal review during the applicable time period? We hold it is.

**[6]** *Bennett* requires the petitioner to "place [the procedural default] defense in issue" to shift the burden back to the government. 322 F.3d at 586. In most circumstances, the best method for petitioners to place the defense in issue is to assert "specific factual allegations that demonstrate the inadequacy of the state procedure" by citing relevant cases. *Id.* But where we have already made a determination regarding the adequacy of the state procedural rule, the petitioner's method of placing the defense in issue must be modified.[2]

**[7]** In *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir. 1998), we held that a petitioner had not met his burden because we had already held the state procedural rule to be consistently applied and the petitioner failed to cite cases demonstrating subsequent inconsistent application. *Id.* at 932. This holding helps prevent inconsistent determinations regarding a state procedural rule's adequacy during a given time period. This same reasoning provides a firm foundation for applying the *Ortiz* requirement bilaterally. Once we have found a state procedural rule to be inadequate, petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the procedure; the burden then shifts back to the government to demonstrate that the law has subsequently become adequate. Here, because we held in *Morales* that the California timeliness rule was insufficiently clear, the government must show on remand that the rule has since been clarified for noncapital cases and that the clarified rule has since been consistently applied.

---

[2]*Bennett* did not foreclose alternative methods of "plac[ing] [the] defense in issue," stating only that the petitioner "*may* satisfy this burden by asserting specific factual allegations . . . ." *Id.* (emphasis added). *Bennett*, of course, did not resolve all of the potential issues involved with applying the "new standard" because it specified the burden-shifting process but did not apply it. *Id.*

This holding is necessary to maintain the primary principle we announced in *Bennett*: the government bears the ultimate burden of establishing the adequacy of a rule. This burden should exist whether or not the petitioner identifies the correct basis upon which to challenge the adequacy of the rule. If we held otherwise, the government could avoid its burden under *Bennett*, and illogical results would occur. Here, for example, we would bar King's claim based on a procedural rule already found to be inadequate. In essence, we would be holding that the same rule is adequate in some cases and inadequate in others. This defies common sense. A procedural rule is either adequate or inadequate during a given time period; its adequacy does not depend upon the facts of a petitioner's case.

**[8]** By challenging the adequacy of a state procedural rule we have found to be insufficiently clear in *Morales*, King has met his *Bennett* burden. On remand, the government must demonstrate that California's "substantial delay" rule has become sufficiently clear and consistently applied to justify barring federal review of King's claim.[3]

## II

**[9]** Even where there is an independent and adequate state procedural rule, if petitioners can demonstrate cause and prejudice for the procedural violation, federal review of the defaulted claim will be permitted. *See Coleman*, 501 U.S. at 750. King asserts that even if California's timeliness rule is an independent and adequate ground, his claim is still reviewable because he meets the "cause and prejudice" exception for procedural defaults.

---

[3]*Morales* specifically reserved the issue of whether *Clark* successfully cleared up the uncertainties regarding capital cases. *Id.*; *see also Bennett*, 322 F.3d at 583 (stating only that *Clark* had "attempted to set out a definite rule" and that it "set out to create a rule that would be consistently applied").

To establish cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). King argues that the external factor preventing him from complying with California's timeliness rule was a lack of money, which prevented him from being ready to pursue his ineffective assistance claim. To establish ineffective assistance of counsel, King needed to show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) he was, as a result, prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

King asserts he needed time to raise money to hire an expert witness and that he needed this expert witness to establish the "prejudice" prong of his ineffective assistance claim.[4] To show prejudice, King had to show that there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, and that the unprofessional errors were egregious enough "to undermine confidence in the outcome." *Id.*

**[10]** When the prosecution's case rests heavily on physical evidence and the prosecution witness's testimony, a defendant can establish prejudice without securing a favorable expert opinion. *See Schell v. Witek*, 218 F.3d 1017, 1028-30 (9th Cir. 2000) ("a failure to solicit the opinion of a fingerprint expert could have constituted ineffective assistance of counsel" in the absence of a favorable opinion). Therefore, King could have supported his claim of prejudice due to ineffective assistance of counsel without securing a favorable expert opinion. He could have asserted—as he does now—the "total lack of any objective physical evidence," the "suspicious explanations" of the witness, and the "numerous inconsistencies in

---

[4]King's mother provided the funds for his previous lawyers. She states in a declaration that she did not have more money to hire the needed expert.

the testimony of the alleged victim and her mother," to high-light the significance of the expert medical testimony and its potentially critical role in the trial.

The expert King eventually secured, Dr. Lee Coleman, but-tresses King's claim of prejudice, opining that the medical findings of the prosecution's expert "are not evidence for any prior sexual conduct." Dr. Coleman's most compelling find-ing is that the girl King was convicted of raping had such a small vagina that it would have been impossible for penetra-tion to occur without "major tearing injury," which was not found.

In the parallel context of showing cause to demonstrate one is not abusing the writ of habeas corpus, both this court and the Supreme Court have held that "[if] what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant." *McCleskey v. Zant*, 499 U.S. 467, 498 (1991); *Harris v. Vasquez*, 949 F.2d 1497, 1514 (9th Cir. 1991). Furthermore, "[o]mission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Id.*

**[11]** Because what King already knew supported a claim for ineffective assistance, his desire to wait until he had better evidence does not constitute cause.[5]

## CONCLUSION

We vacate the district court's judgment with regard to the adequacy of the California timeliness rule, otherwise affirm the district court's judgment, and remand for further proceed-ings consistent with this opinion. Each party shall bear its own costs on appeal.

---

[5]We do not express an opinion as to whether a lack of financial resources could ever constitute the basis for the "cause and prejudice" exception.

**VACATED IN PART; AFFIRMED IN PART; and REMANDED.**

---

REINHARDT, Circuit Judge, concurring in part and concurring in the judgment:

I concur in Part I of the majority's opinion with respect to the adequacy of California's timeliness rule. I agree with the decision to remand the case for a determination whether, since *Morales*, the rule has become sufficiently clear and consistently applied to serve as a bar to federal habeas review.

Unlike the majority, however, I would not reach the alternative issue regarding the "cause and prejudice" exception for procedural default. If I did, I would not join the majority's opinion on that issue. Specifically, I do not agree that King's expert witness merely bolstered, and thus needlessly postponed, an already extant *Strickland* claim. Rather, given the circumstances of his case, King's waiting a *reasonable* period until he could obtain an expert's testimony in order to make a good faith showing of *Strickland* prejudice would not in my view serve to default his claim.

The majority relies on *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000), for the proposition that "a failure to solicit the opinion of a fingerprint expert could [be found to] constitute[ ] ineffective assistance of counsel" even without the provision of a fingerprint expert's opinion. *Id.* at 1028-29. The *Schell* holding was premised, however, "[o]n the distinctive facts of th[at] case." *Id.* at 1028. Further, the *Schell* court found that the record did not "clearly reflect . . . whether Schell's attorney had in fact consulted a fingerprint expert and whether that expert gave a favorable report." *Id.* at 1230. It held that "without [such] fully developed information, [it was] unable to determine whether" Schell's counsel acted competently and whether such "deficiencies prejudiced Schell's

trial"; ultimately, the court remanded for an evidentiary hearing to answer those questions. *Id. Schell* therefore implies, contrary to the majority's suggestion, that the expert opinion itself *may* be crucial in determining whether the defendant has been prejudiced by counsel's conduct.

In *Hasan v. Galaza*, 254 F.3d 1150 (9th Cir. 2001), we held that "to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." *Id.* at 1154. In *Hasan*, the defendant "had knowledge at the time of trial of some facts to support an assertion that his trial counsel's conduct was deficient to an extent [in failing to investigate]." *Id.* The court held, however, that he "did not know at that time — nor did he have reason to know — what he later learned: the added facts that such an investigation would have revealed." Therefore, the court concluded, he "could not have asserted at that time, in objective good faith, that he was prejudiced as a result of his counsel's deficient performance." *Id. Hasan*, like the case before us, does not fall within the rule upon which the majority's opinion relies: "Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Harris v. Vasquez*, 949 F.2d 1497, 1514 (9th Cir. 1991). Here, as in *Hasan*, the evidence obtained — from the expert whom King ultimately retained — would not simply "support" or "strengthen" his claim; rather, it could well be said to be the only basis on which the defendant could make a good faith argument that he had been prejudiced by his counsel's deficient conduct.

*Hasan* and *Schell* together suggest that to demonstrate prejudice for the failure to consult an expert, one must be able to demonstrate what an expert would have said. Thus, I cannot agree with the majority's conclusion that King was required, on pain of default of his constitutional claims, to try to establish prejudice before he could obtain the assistance of an

expert. Ruling on the issue of cause, however, would require resolving the additional question whether King's lack of funds would permit him to satisfy the due diligence required, or in other words whether lack of money may constitute an external factor that impedes a prisoner's effort to comply with a state's procedural rule. This is a difficult question, with many consequential implications, that I would not decide unnecessarily, and certainly not in this case. As we are remanding on the primary issue of the adequacy of the California rule, I would await the district court's ruling on that point and withhold judgment on the alternative cause and prejudice argument. In line with that view, I do not take a position on the funding question at the present time.