**Habacu C. QUINTERO, Petitioner—Appellant,**

**v.**

**Terry L. STEWART, Director; Janet Napolitano, Respondents—Appellees.**

No. 03–16324.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 6, 2004.*

Decided Jan. 20, 2005.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

**204**

---

Jose H. Robles, Esq., The Johnson House, Tucson, AZ, for Petitioner–Appellant.

Cari McConeghy–Harris, Office of the Arizona Attorney General, Phoenix, AZ, for Respondents–Appellees.

Before: O'SCANNLAIN, COWEN,** and BEA, Circuit Judges.

### MEMORANDUM ***

Habacu C. Quintero appeals the district court's denial of his petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. He contends that the district court improperly dismissed, as procedurally defaulted, his *Brady* claim regarding the mental health records of prosecution witness Alfredo Rodriguez. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253 and will affirm.

Quintero was charged with the murder of Mary Orduno, attempted murder of Alfredo Rodriguez, kidnapping of each of them, and conspiracy. Nearly one month before trial, Rodriguez was disclosed as one of the State's witnesses. Quintero requested informally, and pursuant to Rule 15.1(c) or (d), that the State produce Rodriguez's mental health records and other character evidence. In a pre-hearing conference, Quintero objected to the manner and completeness of the State's disclosure. However, the State submitted a statement indicating that it had disclosed all items in the control of the Pima County Attorney's Office.

A few days before trial, the State was unable to locate Rodriguez and moved for a continuance, which was denied. On the first day of trial, after *voir dire*, the State informed the court and Quintero that Rodriguez had been located. Pursuant to the State's request, the court granted an order permitting Rodriguez to testify. Quintero reiterated his intention to use impeachment evidence against Rodriguez if he testified.

Rodriguez ultimately testified and, on cross-examination, Quintero's counsel questioned Rodriguez regarding his mental health. Rodriguez explained that his mental health problems were solely due to the attempted murder and kidnapping. During deliberations, the jury requested copies of Quintero's testimony and the police interview of Quintero. The jury acquitted Quintero of the murder and kidnapping of Orduno, and the conspiracy charge, but convicted him of the attempted murder and kidnapping of Rodriguez.

After exhausting his state remedies, including post-conviction relief, Quintero filed a Petition for a Writ of Habeas Cor-

---

** The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

pus with the district court. The petition was denied and this appeal followed.

We review *de novo* the district court's order dismissing a petition for a writ of habeas corpus on procedural default grounds. *See Griffin v. Johnson,* 350 F.3d 956, 960 (9th Cir.2003). However, findings of fact made by the district court relevant to the denial of the habeas petition are reviewed for clear error. *See Bonin v. Calderon,* 59 F.3d 815, 823 (9th Cir.1995). Similarly, factual determinations made by the state court are presumed correct, unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We cannot grant habeas relief unless the underlying state court judgement "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on a state procedural requirement and is unable to demonstrate cause and prejudice for the default or a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Federal habeas courts generally lack jurisdiction to review state court applications of state procedural rules. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

## I. Procedural Default

■ Under 28 U.S.C. § 2254, a state prisoner must have exhausted, in state court, the federal claims raised in his petition. *See Coleman,* 501 U.S. at 731, 111 S.Ct. 2546. A prisoner who has failed to

meet the state's procedural requirements for presenting his federal claims "has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 732, 111 S.Ct. 2546. Similarly, federal habeas courts must refrain from reviewing a federal question decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. 2546. As we have held:

> A state procedural rule constitutes an adequate bar to federal court review if it was firmly established and regularly followed at the time it was applied by the state court, and is considered independent if it is not interwoven with federal law or dependent on a federal constitutional ruling.

*Poland v. Stewart,* 169 F.3d 573, 585 (9th Cir.1999) (internal quotation marks and citations omitted).

Procedural default is an affirmative defense which the state must plead and prove. *See Bennett v. Mueller,* 322 F.3d 573, 585–86 (9th Cir.2003). However, if the state sufficiently pleads an independent and adequate state procedural ground, the burden shifts to the petitioner to allege specific facts that "demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* at 586.

Here, the Court of Appeals for the State of Arizona, on direct review, held that Quintero waived his *Brady* claim. As the court reasoned, Quintero failed to file a motion under Rule 15.1(e) showing his "substantial need" for Rodriguez's mental health records and his inability to obtain them "without undue hardship." Ariz. R.Crim. P. 15.1(e).[1] "By failing to request

---

1. The substance of then existing Ariz. R.Crim. P. 15.1(e) is now found under Rule 15.1(g).

a court order for the records until his untimely motion for a new trial, which the trial court denied, and by failing to timely raise any constitutional issues in the trial court, Quintero waived any claim relating to production of the records." (Ariz.Ct. App., Mem.Decision, Dec. 23, 1999) (citing *State v. Tison*, 129 Ariz. 526, 633 P.2d 335, 344 (1981), and *State v. Piper*, 113 Ariz. 390, 555 P.2d 636, 638 (1976)).

We have previously held that "Arizona's procedural rules are consistently and regularly followed and are adequate to bar federal review." *Poland*, 169 F.3d at 585. Generally, State rules are deemed inadequate if they are either "selectively applied to bar the claims of certain litigants" or "unsettled due to ambiguous or changing state authority." *Wood v. Hall*, 130 F.3d 373, 377 (9th Cir.1997). As the Supreme Court of Arizona explained: "The preclusion of issues applies to constitutional objections as well as statutory objections because an adherence to procedural rules serves a legitimate state interest in the timely and efficient presentation of issues." *State v. Tison*, 129 Ariz. 526, 633 P.2d 335, 344 (1981) (en banc), *vacated on other grounds sub nom., Tison v. Ariz.*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). This lineage of cases demonstrate that the waiver rule was firmly established and regularly followed at the time of the state court decision.

Further, the state rule is an independent procedural ground as it is not interwoven with any federal substantive or procedural law. Under Ariz. R.Crim. P. 16.1(c), a defendant waives discovery by failing to bring a motion for such evidence within the time limits prescribed under Ariz. R.Crim. P. 16.1(b). *See Piper*, 555 P.2d at 638 (failure to move for discovery of *Brady* evidence prior to trial precludes issue on appeal).

Arizona has not made application of this procedural bar dependent on an antecedent federal ruling, such as the determination of constitutional error. *See Carter v. Giurbino*, 385 F.3d 1194, 1197–98 (9th Cir. 2004) (finding independence of procedural default because state courts "reject sufficiency of the evidence claims as non-cognizable habeas claims ... solely as a matter of state law"). Rather, the sole inquiry is whether the motion for evidence was properly submitted; if it was not, it is precluded unless the basis for such a request was unknown. As the Arizona procedural rule is not dependent on federal law, it is an independent basis for the state court to preclude Quintero from raising his *Brady* claim on appeal.

Although Quintero failed to abide by an adequate and independent state procedural rule, that alone does not automatically prevent review. Rather, the state court must actually have relied on the procedural bar as a basis for dismissal. If the state court overlooks the procedural default, there is no procedural bar to federal review. *See Poland*, 169 F.3d at 585.

Here, the Arizona Court of Appeals— the highest state court to consider the issue—relied on the state procedural bar as an independent basis for denying the appeal. The court clearly and expressly held that the *Brady* issue was waived pursuant to its state procedural laws and the court did not overlook this waiver. The court's decision to alternatively reject the merits of the claim does not undermine the application of the procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.5Ed.2d 308 (1989); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir.1992) (en banc).

While Quintero asserts that he did not waive his claim, as it was raised before the trial court, this issue is beyond our reach. Federal habeas courts lack jurisdiction to

review state court applications of state procedural rules. *See Poland,* 169 F.3d at 584; *see also Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). We therefore refrain from considering whether the Arizona Court of Appeals correctly concluded that Quintero did not preserve his *Brady* claim under Arizona's procedural rules.

Because Arizona's procedural default rule was an adequate and independent basis for the state court decision, our review of the merits is precluded unless Quintero can establish cause and prejudice for his default or that a fundamental miscarriage of justice would result in the absence of our review.

## II. Cause and Prejudice

■ A petitioner may overcome a procedural default on a showing of cause and prejudice. *See Wainwright v. Sykes,* 433 U.S. 72, 85–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Quintero argues that the prosecution prevented him from developing a pretrial *Brady* claim by indicating, prior to trial, that Rodriguez was not available to testify.[2] As Quintero explains, until the second day of trial no one, neither the trial court, the State, nor Petitioner, knew if Rodri-

guez would testify. The notice of non-appearance mooted any impeachment investigation (including discovery of mental health records) regarding the cross-examination of Rodriguez.

We agree with the magistrate judge's determination:

> [T]here was no impediment or obstruction ... that would establish cause for ... failure to make a request, pursuant to *Brady,* of the victim's mental health records. [Quintero's] ability to request the 404(B) material demonstrates that he was not impeded from requesting the mental health records ... by any objective factor external to the defense ... The transcripts demonstrate that the issue as to the victim's mental health became known to [Quintero] prior to cross-examination of the victim, and [Quintero] could have asked at that time for disclosure of any material, but he did not.

(Report and Recommendation, Mar. 24, 2003, at 16–17).

Quintero was aware of the existence of Rodriguez' mental health records and was also informed soon after *voir dire* that Rodriguez would be testifying as a state witness. The reason for Quintero's non-compliance had nothing to do with the state withholding information. *Cf. Paradis v. Arave,* 130 F.3d 385, 393 (9th Cir. 1997) (cause was established where the petitioner raised *Brady* issue for the first time in successive petition based on newly discovered evidence, which prosecution had previously withheld).

The legal basis for framing an evidentiary request was available during the trial.

---

2. Quintero did not raise the issue of cause and prejudice in his opening brief. Ordinarily we would deem such an argument waived, but we may consider it when "the failure to raise the issue properly did not prejudice the defense of the opposing party." *Koerner v.*

*Grigas,* 328 F.3d 1039, 1049 (9th Cir.2003). Since Quintero's cause-and-prejudice argument fails on the merits, the State has not been prejudiced by Quintero's failure to raise it.

Compliance with the procedural rules may have been impracticable the week before the trial began—when Quintero properly thought Rodriguez would not be testifying. However, compliance was certainly not impracticable before Quintero learned that Rodriguez was missing or after the State informed the court and Quintero that they had located Rodriguez. Despite ample opportunity to request the records before or during the trial, Quintero did not raise the issue until after the trial concluded.

The fact that Rodriguez was believed to be unavailable to testify during the week preceding *voir dire* does not constitute cause to excuse the procedural default. As Quintero has not established cause for the default, we need not reach the issue of prejudice.

## III. Fundamental Miscarriage of Justice

■ Because Quintero has been unable to establish cause and prejudice, he may only obtain habeas relief if he falls within the narrow class of cases implicating a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 320–321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "[W]here a constitutional violation has *probably resulted* in the conviction of one who is *actually innocent*, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496, 106 S.Ct. 2639 (emphasis added). To establish the requisite probability, Quintero must show "that it is more likely than not that no reasonable juror would have convicted him [found him guilty beyond a reasonable doubt] in the light of the new

evidence." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851.[3]

To be credible, a substantial claim that constitutional error has resulted in the conviction of an innocent person requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324, 115 S.Ct. 851. The newly presented evidence may call into question the credibility of a witness presented at trial. Under such circumstances, the habeas court may have to make an independent credibility assessment. *See id.* at 330, 115 S.Ct. 851.

Quintero argues that if the mental health evidence was available to develop the basis for contradictions of Rodriguez's testimony in 1991 and 1997 it is certainly possible that no reasonable juror would find his testimony credible. During deliberations, the jury requested copies of Rodriguez's testimony and the police interviews of Rodriguez.

Even if true, the omission of this evidence does not demonstrate that the trial probably resulted in the conviction of one who is actually innocent. Quintero has not established that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. The admitted purpose of the mental health records was to diminish Rodriguez's credibility. However, despite the records, a reasonable juror could have concluded that Rodriguez was credible. Although Rodriguez may have been treated for mental illness, a reasonable juror could have concluded that he was sane enough to accu-

---

**3.** We have questioned whether the *Schlup* standard for determining actual innocence for an evidentiary hearing request was superceded by the "clear and convincing" standard contained within 28 U.S.C. § 2254(e)(2) of the Antiterrorism Effective Death Penalty Act of

1996 ("AEDPA"). *Jaramillo v. Stewart*, 340 F.3d 877, 881–82 (9th Cir.2003). We refrain from deciding here whether *Schlup* survives the enactment of AEDPA because Quintero fails to establish he is eligible for relief under either standard.

rately recall his near-death experience. Alternatively, a reasonable juror could have diminished the value of Rodriguez's testimony and nonetheless convicted Quintero based on other evidence.

Because the Arizona Court of Appeals based its decision on an independent and adequate state ground for denial, procedural default limits our review. As Quintero has not demonstrated sufficient cause and prejudice for the default, or a fundamental miscarriage of justice, we affirm.

AFFIRMED.